## Motz *versus* Mitchell.

If A. obtains possession of a deed and uses it for the purpose of extorting money from B. as the price of its preservation or of permission to use it in defending his title, and by threats, express or implied, gives B. to understand that the deed would be withheld or destroyed unless his demand were complied with, the payment is to be deemed involuntary, and the wrongdoer shall be compelled to make restitution.

June 18th 1879. Before SHARSWOOD, C. J., MERCUR, GORDON, PAXSON, TRUNKEY and STERRETT, JJ. WOODWARD, J., absent.

Error to the Court of Common Pleas, of *Union county*: Of May Term 1879, No. 183.

Assumpsit on a book account by Robert J. Mitchell against John C. Motz. The defendant pleaded non assumpsit, payment, and payment with leave to give special matter in evidence. The plaintiff was an attorney-at-law, and this action was for an alleged balance of $317.62, due him by defendant for services rendered. The material facts are stated in the opinion of this court.

At the trial before Bucher, P. J., the defendant offered to prove that the plaintiff had in his posssesion a deed from Shem Spigelmeyer and wife, to Daniel Weidensaul, for forty-two acres and forty-four perches of land, with a water-power, grist-mill, saw-mill, &c., said deed being for the undivided half of said property. That defendant was the owner of the said property, and purchaser at sheriff's sale of the interest set out in said deed. That said deed was unrecorded. That Mitchell, the plaintiff, proposed to sell this title paper, and that Motz, for fear said title paper would be destroyed, paid Mitchell $150 in order to get possession of said deed. This offered for the purpose of showing that the plaintiff has $150, obtained from the defendant, under duress, which defendant claims the right to defalcate in this action.

The court rejected the evidence, saying: " There is nothing in the position that a plea of set-off is not admissible under the pleadings, because a set-off can be admitted under the plea of payment, and it is well settled that a set-off arising out of a distinct transaction can be set-off, but the difficulty we have in the admission of the evidence is this: That the defendant, by virtue of the sheriff's sale, acquired no special property in the deed, and that the payment of the $150 on his part was voluntary, and for that reason it cannot be recovered back, and though it is true that the doctrine of duress has been extended from what it was at common law, so as to include money paid, in order to extort it from a party, in order to enable him to get the possession of his goods, yet we cannot say that this deed was the goods and chattels of the defendant, and for that reason we reject the evidence." (First assignment of error.)

[Motz v. Mitchell.]

The defendant also offered to prove that the plaintiff had in his possession the deed mentioned in the preceding offer, and, notwithstanding the defendant's right to a subpœna *duces tecum*, he feared the evidence would be destroyed and he would suffer a great loss if he refused to comply with the demand of the plaintiff for $150 in money, and that he paid that sum of money not voluntarily, but under *duress per minas*, of withholding and destroying the evidence.

The court rejected the evidence, saying: "There is no offer to prove that the plaintiff threatened to destroy the deed as an instrument of writing, and we cannot hear evidence of the hopes and fears and expectations of the defendant not communicated to the plaintiff." (Second assignment of error.)

The verdict was for the plaintiff, when defendant took this writ and alleged, inter alia, that the court erred as set forth above.

*Samuel H. Orwig*, for plaintiff in error.—The withholding of a title paper under circumstances such as are presented in this case, whereby one party is constrained to pay money to another, to get possession of such title paper under a well-grounded fear of loss and injury, and without means of preventing such loss and injury, except by paying the money demanded, is within the doctrine of duress: White *v.* Heylman, 10 Casey 142; Miller *v.* Miller, 18 P. F. Smith 486.

The offer to prove that the payment of the money was *not voluntary*, but under the threat of withholding and destroying the evidence, and that the plaintiff *had in his possession* the deed mentioned in the preceding offer, was distinctly made. And it is respectfully contended that the defendants below had the right to an explicit ruling upon the offer; to show that the deed in question was then and there in the hands of the plaintiff at the time of the promise and the payment of the $150; to show the facts and circumstances under which he paid it; and as he offered to do in his third and fourth offers, that he had *well grounded reasons to believe* that his evidence, contained in said deed, would be destroyed, unless he paid the money demanded. And it was also apparent, from the second offer, that the defendant below, notwithstanding his right to a subpœna *duces tecum*, had not the means to prevent the injury threatened.

*William Van Gezer*, for defendant in error.—Being rightfully in possession of the deed, and having the right to continue in possession until such time as the plaintiff in error should, by availing himself of the provisions of the statute law, become entitled to its delivery to him, defendant in error was guilty of no duress by *withholding* it. "Duress implies an *illegal* detention:" Gulliver *v.* Cosens, 9 Jur. 666. Goods must be "*wrongfully* withheld" to

[Motz *v.* Mitchell.]

avoid a note given to obtain possession of them : White *v.* Heylman, *supra.*

To constitute a payment under *duress per minas,* the threats must emanate from the one by whom the payment is demanded. It follows, as a corollary, that an offer to prove payment under *duress per minas,* should specifically allege *by whom* it is claimed the threats were made, and set forth the grounds upon which the alleged apprehensions, inducing the payment, were based. Otherwise testimony would be admissible, under the offer, of fears and expectations on the part of the payer that, however real they might be, and however well calculated to induce unwilling payment, were in no sense the creation of the payee, and for the exciting of which he could in no manner be held responsible.

The payment of the $150, by the defendant to the plaintiff, was a purely voluntary payment, for which there was a sufficient consideration, and it cannot be recovered back.

Mr. Justice STERRETT delivered the opinion of the court, October 6th 1879.

The defendant below contended that the plaintiff wrongfully obtained from him $150, under circumstances which made the payment involuntary, on his part, and justified him in defalking the same against the plaintiff's demand.

It appeared that Spigelmeyer conveyed to Weidensaul his interest, as tenant in common, in a mill property, and that on a judgment against the latter, obtained after he had acquired Spigelmeyer's interest, the property was sold and purchased by the defendant below ; that subsequently litigation arose between him and Spigelmeyer's assignees, who, under the deed of voluntary assignment for the benefit of creditors, asserted title to the undivided moiety of the mill property ; that the deed from Spigelmeyer and wife to Weidensaul had never been recorded, and neither of them could or would give any information concerning it, except that Spigelmeyer alleged such a deed had been made, but had no recollection that it had ever been delivered.

It was alleged by the defendant that while suit was pending and his title was in jeopardy for want of the deed, or evidence of its existence and subsequent loss, the plaintiff below, then residing in the family of Weidensaul, obtained possession of the deed, and after failing to negotiate with the assignees for its surrender, in their interest, demanded the money from defendant, as the price of his being permitted to use the deed in defending his title ; that in view of the circumstances in which he was placed and the conduct of the plaintiff, he was firmly impressed with the belief that the deed would be withheld or destroyed, and that he would suffer great loss if he refused to comply with the demand ; that he was

constrained to yield to the pressure thus brought against him and paid the amount demanded.

The principle contended for by the plaintiff in error, that money obtained by duress, extortion, imposition or otherwise involuntarily paid, may be recovered back, appears to be sustained in White *v.* Heylman, 10 Casey 142. In that case, money had been paid and a note given to procure the reconveyance of land, the title to which had been vested in a stranger by the wrongful act of an agent. After stating that the defendant was forced to pay his faithless agent money and give him the note in suit, in order to procure a transfer to himself of what was in reality his own, the court proceeded to say : "Neither the payment of the cash nor the giving of the note was voluntary, but both were extorted from the defendant and come within that class of cases in which money illegally claimed and paid has been recovered back, where goods, deeds, or papers have been wrongfully detained until the money has been paid."

The general rule, as stated in Chitty on Contracts 625, "seems to be, that the payment of money by the owner of goods, in order to redeem them from the hands of a person who unlawfully withholds them and demands such money, may be treated as a compulsory payment, so that the amount is recoverable, as having been obtained by oppressive means. The owner of the goods may have so urgent occasion for them that the ordinary action may afford very imperfect redress."

In Miller *v.* Miller, 18 P. F. Smith 486, it is said that in civil cases, the rule as to duress *per minas* has a broader application at the present day than formerly. Where a party has the property of another in his power, so as to enable him to exert his control over it to the prejudice of the owner, a threat to use this control may be in the nature of the common-law *duress per minas*, and enable the person threatened with this pernicious control to avoid a bond or note obtained without consideration, by means of such threats. The constraint that takes away free agency and destroys the power of withholding assent to a contract must be one that is imminent and without immediate means of protection, and such as would operate on the mind of a person of reasonable firmness. As it is expressed in Astley *v.* Reynolds, 1 Strange 915, the rule *volunti non fit injuria* is applied only "where the party had his freedom of exercising his will." The same general principle is also recognised in Colwell *v.* Peden, 3 Watts 327 ; Foshay *v.* Ferguson, 5 Hill (N. Y.) 154 ; Sasportas *v.* Jennings, 1 Bay 470, and Collins *v.* Westbury, 2 Id. 211.

If the plaintiff below obtained possession of the deed and used it for the purpose of extorting money from the defendant, as the price of its preservation or of permission to use it in defending his title, and by threats, express or implied, gave defendant to under-

[Motz *v.* Mitchell.]

stand that the deed would be withheld or destroyed, unless his demand was complied with, the payment should be deemed involuntary and the wrongdoer should be compelled to make restitution.

Several offers were made for the purpose of showing the circum-. stances under which the alleged involuntary payment was made. The first of these was to prove in substance that the plaintiff had the deed in his possession and proposed to sell it, and for fear it would be destroyed, Motz paid him " one hundred and fifty dollars to get possession of the deed."

Standing alone the testimony proposed in this offer was insufficient to show an involuntary payment, and there was, therefore, no error in excluding it; but we think the learned judge was not quite accurate in saying that the defendant, by virtue of the sheriff's sale had acquired no special property in the deed. In a certain sense this may be true, but in another it is not strictly so. He had an interest in the deed. It was an important link in the chain of the title which he was defending in the action of ejectment. This interest is recognised by the Act of 1863, which provides a mode in which, after six months' notice, he might have compelled Weidensaul to either record the deed or deliver it to him. As an instrument of evidence, he was deeply interested in the preservation and production of the deed. Without it, he might have failed to procure such secondary evidence as would enable him to successfully defend his title to the undivided moiety of the property in dispute.

While the offer embraced in the second assignment is not as full and specific as it might have been, we think the testimony should have been received. The learned judge in excluding the testimony assigns as a reason therefor that there was no offer to prove that the plaintiff threatened to destroy the deed as an instrument of evidence if he was not paid the money. As we understand the offer, this was substantially what the defendant proposed to prove. If he was prepared to show that the plaintiff in express terms, or by reasonable implication, threatened to destroy the deed, or otherwise deprive him of the use of it as an instrument of evidence, he should have been permitted to do so. Of course, it was impossible for the court to know whether the defendant was prepared to sustain his offer or not, but when he proposed to prove among other things that he paid the money "not voluntarily, but under *duress per minas* of withholding and destroying the evidence," it was bound to assume that the offer was made in good faith. Nor was it necessary to show that the hopes and fears of the defendant were communicated to the plaintiff. If the latter acted as it is claimed he did, the natural inference would be that he intended to operate on the mind of defendant, and so excite his fears and apprehensions as to insure the accomplishment of his purpose, whether that was to obtain the money as the naked price of preserving the deed and

permitting defendant to use it in defending his title, or as compensation, so called, for professional services coupled with permission to use the deed.

The testimony embraced in the second offer should have been received, in connection with proof of other facts tending to show that the plaintiff obtained possession of the deed and used it for the purpose of extorting money from the defendant, by threats, express or implied, of withholding or destroying it, unless his demand was complied with.

Judgment reversed and a *venire facias de novo* awarded.