## Sulzner *v.* Cappeau-Lemley & Miller Company, Appellant.

*Contracts—Duress—Constraint — Threats — Reasonable firmness — Fear of immediate imprisonment—Evidence.*

1. A person is supposed to possess ordinary firmness unless it is shown that by reason of age or other sufficient cause he is weak or infirm.

2. The constraint that takes away free agency and destroys the power of withholding assent to a contract must be one that is imminent and without immediate means of protection, and such as would operate upon the mind of a person of reasonable firmness. Ordinarily, when no proceedings have been commenced, threats of arrest, prosecution, or imprisonment do not constitute legal duress to avoid a contract; the threats must be made under such circumstances that they excite the fear of imminent and immediate imprisonment.

3. In an action of replevin for the recovery of the certificate for certain shares of stock deposited with the defendants for sale, for the transfer of which the plaintiff subsequently executed appropriate

papers, evidence that the plaintiff signed the papers under a threat that his son would be put in jail unless he did so, is not sufficient to sustain a finding that the plaintiff's signature was obtained by duress, where it does not appear by the evidence that the plaintiff was not a man of ordinary firmness, and it does appear that he himself was not threatened with arrest at any time, and that upon the occasion when he signed the contract both the plaintiff and his son were at liberty to come and go as they chose and had ample time to consult an attorney had they so desired.

*Practice—Judgment non obstante veredicto—Requests for instruction —Act of April 22, 1905, P. L. 286.*

4. Where the record shows no request for binding instructions **or** no question of law reserved, judgment non obstante veredicto cannot be entered upon the whole record under the Act of April 22, 1905, P. L. 286.

*Appeals—Assignments of error—Final judgment.*

5. Where upon appeal there is no assignment of error complaining of judgment for the plaintiff, final judgment in favor of the defendant will not be entered, even where the plaintiff has adduced no evidence sufficient to sustain a finding in his behalf.

Argued Oct. 20, 1911. Appeal, No. 145, Oct. T., 1911, by defendant, from judgment of C. P. No. 4, Allegheny Co., Fourth T., 1907, No. 220, on verdict for plaintiff in case of Joseph F. Sulzner v. Cappeau-Lemley & Miller Company. Before Fell, C. J., Brown, Mestrezat, Potter, Elkin, Stewart and Moschzisker, JJ. Reversed.

Replevin to recover certificate of stock. Before Swearingen, P. J.

The opinion of the Supreme Court states the case.

The court charged in part as follows:

[The plaintiff alleges—and he must prove his allegations to you by the weight of the evidence—that he was induced to execute these papers by what is known as duress. He alleges that the defendants, or their attorney, threatened him that his son would be sent to the penitentiary; that he was not in good health, and that he became bewildered and did not really know what he was doing when he signed these papers. Now, as I said to you before, the burden is

upon him to establish that proposition, and if he has established that he was practically compelled to sign these papers by threats to send his son to the penitentiary, and that threat was such as would have operated upon the mind of an ordinary person so far as for the time being to unsettle him, then you can find that the contract, which these papers indicate, was not the contract of Joseph F. Sulzner, made freely and voluntarily. If that be true your verdict ought to be for the plaintiff. So that is the crucial question for you to determine.] [1]

[If you find, on the other hand, that he did not enter into this contract voluntarily, but that he acted under duress, a threat to prosecute his son and cause his imprisonment, and that that was done in order to force it out of the hands of the plaintiff, then your verdict should be for the plaintiff.] [2]

Verdict for plaintiff. Defendant appealed.

*Errors assigned* among others were (1, 2) portions of charge as above.

*Charles A. O'Brien,* for appellant, cited upon the subject of duress: Union Nat. Bank v. Dersham, 15 W. N. C. 541; Higgins v. Brown, 78 Me. 473 (5 Atl. Repr. 269); Wilkerson v. Hood, 65 Mo. App. 491; Russell v. McCarty, 45 Ga. 197; Hilborn v. Bucknam, 78 Me. 482 (7 Atl. Repr. 272); Sutliff v. Johnson, 17 Neb. 575 (24 N. W. Repr. 217).

*Harvey A. Miller,* with him *U. G. Vogan,* for appellee, cited: Union Nat. Bank v. Dersham, 15 W. N. C. 541; Jordan v. Elliott, 12 W. N. C. 56.

OPINION BY MR. JUSTICE MOSCHZISKER, January 2, 1912:

The plaintiff deposited a certificate for 2,500 shares of the stock of a mining company with the defendants for the purpose of sale. A few days later a meeting took place

at the office of the defendants in relation to this sale, and certain other persons appeared and claimed to be purchasers of portions of the stock through a son of the plaintiff and another man who they asserted acted as his agents. The plaintiff recognized these claims, accepted in cash what the alleged purchasers declared to be the unpaid balance due, signed a receipt for the purchase money, and executed appropriate papers to carry out a proper division and transfer of the stock. Subsequently he instituted this action of replevin to recover the certificate for the stock in question.

At the trial of the cause the plaintiff did not deny the identity of the papers executed by him but asserted that they were obtained by duress. This issue was submitted to the jury, and they found a verdict in favor of the plaintiff for the value of the stock; judgment was entered thereon and the defendant has appealed. The appellant states the questions involved to be: 1. Was the charge of the court correct and adequate on the question of duress? 2. Was the plaintiff entitled to recover on the whole evidence in the case? We shall consider the latter question before passing upon the former.

There is no sufficient testimony to show that the plaintiff was either old or infirm at the time of the transaction complained of. The only evidence bearing upon that point was a statement by him that a few months previous thereto he had been in Texas for his health, "about my nervous system." The alleged coercion was thus described by the plaintiff: "Mr. Taylor says, 'Mr. Sulzner, are you aware that your son has sold 1,000 shares to Mr. Volquarts of this stock?' I says, 'No, sir, I don't know anything about it.' He says, 'He has;' and he says also, 'Mr. Kirker sold 1,000 shares to Mr. Cappeau-Lemley. George sold his at nineteen cents, and Cappeau-Lemley for twenty-six cents.' I said, 'I won't stand for anything like that because,' I said, 'they had no business.' I said, 'Why didn't you tell me all this before you got my stock here, because this wasn't the deal we were to get

now. You were to give me my money for it.' And then
Mr. Taylor says, 'Mr. Volquarts, tender $125 to Mr. Sulz-
ner, the balance of $190 which George gave a check for
$65.00 on account.' 'Well, now,' I said, 'this is a snap
judgment you are taking on me.' I says, 'I don't know
anything about this.' He says, 'Well, here is the money.'
And he says then, 'Mr. Lemley, you tender $260,' and he
says, 'I don't think I have that much in the office. I will
go in and see.' And he went in the office and brought out
$260 and then laid that down to me. And Mr. Taylor
says, 'Now, Mr. Sulzner, we have tendered you this money
for 2,000 shares,' and he says, 'Take that,' and he had a
paper in his hand, and he says, 'We will put your son in
the pen.' He says, 'It is either take that or take the con-
sequences.' Then, I broke down and started to cry. I got
so bewildered. . . . After that they had me so confused
I didn't know what I was doing. I wanted to go home and
I picked up the money and I says to George, I says,
'George, you are getting me into all kinds of trouble. You
had no business doing this' and I took the money up and
went home.'' The plaintiff further said that he took the
money and signed the papers "To save my son from being
arrested." The son described the incident practically as
his father, adding, "Mr. Taylor was walking around there
flashing the paper, going to send me to prison, send me to
the penitentiary . . . . and father got all bewildered and
broke down, did not know what to do, and he said, 'You've
got me into this, and I have got to pay or you will go to
prison.' I said, 'There is nothing to it at all.'''

Under both the civil and common law, threats, in order
to constitute duress, had to be of "such a character as to
induce a well-grounded fear in the mind of a firm and
courageous man," but, "the doctrine which is now ap-
proved by the judicial mind, both of this country and of
England, is, that any contract produced by actual in-
timidation ought to be held void, whether arising from a
result of merely personal infirmity, or from circumstances
which might produce a like effect upon persons of ordinary

firmness:" Jordan v. Elliot, 12 W. N. C. 56, 59. A person is supposed to possess ordinary firmness unless it is shown that by reason of age or other sufficient cause he is weak or infirm: Union National Bank v. Dersham, 15 W. N. C. 541. "The constraint that takes away free agency and destroys the power of withholding assent to a contract must be one that is imminent and without immediate means of protection, and such as would operate upon the mind of a person of reasonable firmness:" Motz v. Mitchell, 91 Pa. 114, 117. Ordinarily, when no proceedings have been commenced, threats of arrest, prosecution, or imprisonment do not constitute legal duress to avoid a contract; the threats must be made under such circumstances that they excite the fear of imminent and immediate imprisonment: Moyer v. Dodson, 212 Pa. 344; Harmon v. Harmon, 61 Me. 227; Higgins v. Brown, 78 Me. 473; Hilborn v. Bucknam, 7 Atl. Repr. (Me.) 272; Sieber v. Weiden, 24 N. W. Repr. (Neb.) 215; Wilkerson v. Hood, 65 Mo. App. 491; Russell v. McCarty, 45 Ga. 197.

The decision in Jordan v. Elliot, 12 W. N. C. 56, cited by the appellant, does not control the present case. There the plaintiff, who was an infirm widow, seventy-seven years of age, knew of the defendant, as a man of violent disposition; his threat was to put her son in jail before night, and at the time of the execution of the papers she was laboring under great agitation. This court in its opinion states: "The circumstances which surrounded the old lady, and which induced, or which compelled her, to execute the paper in controversy, were of an extraordinary rough, impudent, and fraudulent character:" and, further, that she had a "conviction that she was dealing with a dangerous man whose will it would not be safe to resist." Although the English case of Williams v. Bayley (L. R. 1 H. L. 200) is referred to, the law of that case was not adopted as necessary to the decision of Jordan v. Elliot. After citing it, we expressly stated, "How aptly these authorities bear on the case in hand I need not say, for anyone who reads the evidence, will at once see that

Mrs. Elliot was thoroughly overcome by fear, produced by the conduct of the plaintiff, that in the execution of the note in suit, she was anything but a free and voluntary agent."

The plaintiff had been president of the mining company whose stock was in controversy, and so far as the evidence shows he was a man of ordinary firmness; he himself was not threatened with arrest at any time, and upon the occasion when he signed the contract which he is endeavoring to avoid, both the plaintiff and his son were at liberty to come and go as they chose and had ample time to consult an attorney had they so desired. The evidence as presented was not sufficient to sustain a finding that the plaintiff's signature had been obtained by duress, and had the defendant requested binding instructions he would have been entitled thereto; but the record shows no such request or no question of law reserved. Under these circumstances the defendant was not within the Act of April 22, 1905, P. L. 286, and had no right to judgment non obstante veredicto upon the whole record; and since there is no assignment of error complaining of the judgment for the plaintiff we will not enter a final judgment the other way. However, the charge of the trial judge was inadequate, in that it did not sufficiently define the applicable rules of law as we have stated them.

The last two assignments of error, which complain of the refusal to enter judgment non obstante veredicto, are overruled; the first two, which go to the charge, are sustained; the judgment is reversed with a venire facias de novo.