Opinion by
 

 Fine, J.,
 

 Joseph Palatucci, appellee, entered judgment on January 8, 1947, on a note in the amount of $1,600.00 given by Lewis W. Woodland and Elizabeth M. Woodland, husband and wife. Lewis W. Woodland died on June 9, 1947. Execution issued on the judgment on March 4, 1949. On March 25, 1949, Elizabeth M. Woodland, appellant, filed her petition to open judgment averring that (1) she received no consideration for the execution of
 
 *317
 
 the note, and (2) she signed the note under duress. An answer was filed denying the material averments of the petition and depositions were taken. After argument the court below discharged the rule to open judgment and this appeal followed.
 

 The depositions disclose that Lewis W. Woodland borrowed $1,600.00 from appellee, and gave him two checks therefor, one dated September 6, 1946, in the amount of $1,000.00 and another check dated September 17, 1946, in the amount of $600.00. The checks were deposited for collection in the early part of October, 1946, and were returned dishonored because of insufficient funds. Upon the return of the checks so marked, appellee, on or about October 7,1946, called at the Woodland home and exhibited the two checks to the appellant.
 

 There is some disagreement as to what was said during the conversation in the Woodland home between the appellant and appellee. Appellant stated the appellee threatened that if she did not sign a judgment note in the amount of the two checks ($1,600.00), he would have her husband arrested and prosecuted criminally for issuing bad checks; that she was compelled by this duress to execute the note. She testified: “And then Mr. Palatucci told me that he had spoken to one of the officers at the bank about the checks being no good and about my husband issuing them. And he told me that my husband
 
 could
 
 be arrested and prosecuted for issuing the bad checks. And I asked him not to do anything because my husband was very sick in the hospital at that time and had had a heart attack, and I thought any other excitement would be very serious for him. So he told me that if my husband and I would sign a note he would give me back the two bad checks which he said my husband had given to him.” Appellee denied any threat Avas made. He testified: “Q. Did you make any threats to Mrs. Woodland that you Avere going to have her husband arrested on account of these checks? A. No, sir.
 
 *318
 
 I liad no reason because I knew Mr. Woodland was a man of his word and if anything turned out and he would get back to work it would have been O.K. . . .”
 

 Appellee further testified that as a result of his conversation with appellant it Avas mutually agreed she and her husband would execute a note covering the indebtedness of $1,600.00, after the appellee prepared the note and mailed it to her. The evidence established that Mrs. Woodland did receive the note by mail and it was .then taken by her to the hospital where both she and her husband signed it. Mrs. Woodland then mailed the sealed note to appellee on or about October 15, 1946. Upon receipt of the note appellee then forwarded the two dishonored checks to appellant by mail.
 

 The Act of 1945,
 
 [1]
 
 P. L. 625, §1, 48 PS §31, empowered a Avife to make any contract that could be validly made by an unmarried woman and removed the exception that she could not become an accommodation maker or endorser or surety for another. Hence, appellant was fully empowered to execute the note here involved without consideration moving directly to her from appellee.
 

 Apparently, the appellant has abandoned her argument that lack of consideration invalidated the judgment. She noAV says: “It is conceded by [her] that standing alone, the lack of consideration did not invalidate the judgment since the note was executed under seal.” As stated in
 
 Shinn v. Stemler,
 
 158 Pa. Superior Ct. 350, 352, 45 A. 2d 242: “The note was under seal, and a seal imports a consideration and creates a legal obligation; it follows that upon a note under seal want of consideration is no defense in Pennsylvania (citing cases).” Considering appellant’s concession and the form of the note, we need not labor the question to show an existing consideration.
 

 
 *319
 
 The appellant does urge in substance that there was no accrual of benefit to her and that such circumstance corroborated her position that duress was exercised upon her by appellee to secure the note. Whether or not duress was resorted to by appellee may best be gleaned from the pertinent conversations and the relationship of the parties. Nowhere do we find either a threat or a declaration of intent to arrest the husband; there were no unfriendly or impatient demands or arguments. Appellant’s husband was a stock broker’s customers’ man and appellee was his client,—one who retained absolute trust and confidence in Woodland even after the checks were dishonored. The appellant herself knew appellee prior to their conversations about the checks and the note. He had been a neighbor of the Woodlands at Margate, New Jersey, in the summer of 1943, where they saw each other practically every day; he had called at their Philadelphia home on a number of occasions. In these circumstances it would naturally follow that the appellee, knowing the husband Avas in a hospital, would convey any unfavorable information to the wife rather than to him, and probably Avould first suggest to her how to overcome the adverse situation.
 

 The testimony of appellant is merely to the effect that Palatucci told her that her husband
 
 could
 
 be arrested and prosecuted. The appellee did not say that, if they did not sign the note, he
 
 would
 
 arrest Woodland. Cf.
 
 Union National Bank v.
 
 Dersham, 15 W. N. C. 541. There is no evidence the appellant’s signature was induced by fear that the alleged threat would be carried out. Appellant’s recital of the negotiations leading up to the execution of the note, which took approximately one week, and which were conducted by the use of the mails, effectively repels any suggestion the alleged threats were persuasive. She had ample time and ample opportunity, if she so desired, to consult counsel before executing the note in question.
 

 
 *320
 
 “Ordinarily, when no proceedings have been commenced, threats of arrest, prosecution, or imprisonment do not constitute legal duress to avoid a contract; the threats must be made under such circumstances that they excite the fear of imminent and immediate imprisonment” :
 
 Sulzner v. Cappeau-Lemley & Miller Co.,
 
 234 Pa. 162, 167, 83 A. 103;
 
 Moyer v. Dodson,
 
 212 Pa. 344, 61 A. 937;
 
 Harris v. Tyson,
 
 24 Pa. 347; Cf. Restatement, Contracts, §§492, 493; 17 Am. Jur., Duress and Undue Influence, §22, pp. 899-902. “It is the declared law in this state that to avoid a contract alleged to have been procured by intimidation it must be made to appear that such intimidation existed either as the result of personal infirmity or from circumstances likely to coerce a person of ordinary firmness. The quality of firmness is assumed to exist in every person competent to contract unless it appears that by reason of old age or other sufficient cause he is weak or infirm. It is to be observed too in this connection that the duress which prevents free action and destroys the ability to refuse assent to a contract must be imminent, without present means of protection and such as would operate on the mind of a person of reasonable firmness”:
 
 Molony v. Matthews,
 
 86 Pa. Superior Ct. 370, 372.
 

 The doctrine of duress has broadened in modern times but is is doubtful if the record in this case would disclose a defense in any jurisdiction, certainly not in this. In the case before us there was no threat expressly or impliedly involved in the words which appellant claimed were uttered by the appellee. Moreover, if a threat to bring an action was made it did not preclude the opportunity to consult counsel before executing the note. There could be no duress where the contracting party is free to come and go and to consult counsel.
 
 Pziepoira v. Long,
 
 338 Pa. 242, 12 A. 2d 904;
 
 Irwin v. Weikel,
 
 282 Pa. 259, 127 A. 612;
 
 Sulzner v. Cappeau-Lemley & Miller Co.,
 
 supra.
 

 
 *321
 
 “An application to open a judgment entered upon a warrant of attorney is an equitable proceeding governed by equitable principles and addressed to the sound discretion of tlie court. On appeal we consider only whether the court kept within the bounds of its discretionary power: Boyd v. Kirch, 234 Pa. 432; Newton T. & T. Co. v. Underwood, 317 Pa. 212; Kaier Co. v. O’Brien, 202 Pa. 153, 160. An oath against an oath or a mere conflict of evidence do not warrant the submission of the issue to a jury. The evidence must carry such conviction of truth as to convince the judge that the judgment should be opened and a jury trial awarded: Mielcuszny et ux. v. Rosol, 317 Pa. 91":
 
 B. & L. Assn. v. Walukiewicz,
 
 322 Pa. 240, 241, 185 A. 648. An order of a court below will not be disturbed in the absence of clear abuse of discretion:
 
 Oppenheimer v. Shapiro,
 
 163 Pa. Superior Ct. 185, 188, 60 A. 2d 337. The testimony taken on the rule is manifestly insufficient to justify the submission of the question to the jury and wholly inadequate to sustain a verdict in appellant’s favor. Cf.
 
 Jenkintown National Bank’s
 
 Appeal, 124 Pa. 337, 17 A. 2;
 
 Stoner v. Sley System Garages,
 
 353 Pa. 532, 46 A. 2d 172.
 

 Order affirmed.
 

 [1]
 

 Amended by Act of 1947, P. L. 352, §1, 48 PS §32.