499 A.2d 1369

**Lambert SNYDER and Cindy Snyder, Appellants,**

**v.**

**James M. ROGERS, Jr., and Joanne M. Rogers.**

Superior Court of Pennsylvania.

Argued June 6, 1985.

Filed Oct. 18, 1985.

506

Frank S. Poswistilo, Easton, for appellants.

Before SPAETH, President Judge, and McEWEN and BECK, JJ.

SPAETH, President Judge:

This is an appeal from an order dismissing appellants' exceptions and entering judgment against defendant husband only. Appellants, plaintiffs below, argue that judgment should also have been entered against defendant wife. We affirm.[1]

Appellants, Lambert Snyder and his wife Cindy Snyder, were the owners of a wholesale produce business. James M. Rogers, Jr., was manager of the business. In January 1981 Mr. Snyder concluded that Mr. Rogers and another employee, a truck driver named Teddy, were stealing produce, and on January 30 he fired them. Mr. Rogers was

---

1. The judgment against defendant husband has not been challenged. This appeal concerns only defendant wife's liability, and she is appellee here.

arrested but was released the same day, and so far as the record discloses, no further criminal proceedings occurred.

On January 31, 1981, Mr. Snyder, in the presence of Mr. and Mrs. Rogers, at their home, played a tape recording of a telephone conversation he had had with Teddy, in which Teddy accused Mr. Rogers of being the one mainly responsible for stealing the produce. After listening to the tape, Mr. Rogers agreed to make restitution, although no amount was specified at that time. The next business day, Monday, February 2, Mr. Snyder telephoned Mr. Rogers and agreed to rehire him, stating that the parties would "straighten things out." Mr. Rogers returned to work that afternoon.

On February 7, 1981, Mr. and Mrs. Snyder went to the home of Mr. and Mrs. Rogers. There, after some conversation, which will be discussed later, Mr. and Mrs. Rogers executed, under seal, a note by which they promised to pay Mr. and Mrs. Snyder $30,000, with interest, and authorized confession of judgment. Slip opinion of tr.ct., Decision and Verdict, at 4.[2] On February 10 appellants confessed judgment on the note, in the amount of $30,000 plus interest, costs of suit, release of errors, and a collection fee of 10

---

2. Plaintiffs' Exhibit No. 1 is the promissory note. It is dated February 7, 1981, and states:

One day after date we promise to pay to the order of Lambert & Cindy Snyder THIRTY THOUSAND—30,000......dollars with defalcation, value received, with interest.

And further we do hereby authorize and empower the Prothonotary, Clerk of Court or any Attorney of any Court of Record of Pennsylvania, or elsewhere, to appear for and to confess Judgment against us for the above sum, as of any term, past, present or future, with or without declaration, with costs of suit, release of errors, without stay of execution, and with 10 per cent added for collecting fees; and we also waive the right of inquisition on any real estate that may be levied upon to collect this note, and do hereby voluntarily condemn the same, and authorize the Prothonotary to enter upon the writ of execution our said voluntary condemnation, and we further agree that said real estate may be sold on a writ of execution and we hereby waive and release all relief from any and all appraisement, stay or exemption laws of any State, now in force, or hereafter to be passed.

Witness, _____ /s/ James M. Rogers, Jr.  (SEAL)

_____ /s/ Joanne M. Rogers  (SEAL)

percent. Notice of entry of the judgment was mailed to Mr. and Mrs. Rogers.

Over the next eight months, Mr. and Mrs. Rogers made payments on the note totalling $13,980. When the payments stopped, Mr. and Mrs. Snyder threatened execution on the judgment. On October 20, 1981, Mr. and Mrs. Rogers filed a petition to open the judgment raising the defenses of fraud and duress. The trial court granted the petition. Mr. and Mrs. Snyder appealed to this court, but the appeal was discontinued and the case was returned for trial.

At the conclusion of the trial, the court, sitting without a jury, found in favor of Mr. and Mrs. Snyder in the amount of $16,020 plus interest, a collection fee of 10 percent, and record costs. The finding, however, was against Mr. Rogers only. Mr. and Mrs. Snyder filed exceptions to the court's determination that Mrs. Rogers was not liable on the note. The court dismissed the exceptions, judgment was entered accordingly, and this appeal followed.

The trial court found that Mrs. Rogers, to whom we will hereafter refer as appellee, was not liable on the note because her promise was "nudum pactum" and as such, unenforceable. Slip Opinion of the Court, at 3. Appellants argue that this conclusion is erroneous on several grounds. We shall not, however, address all of appellants' arguments. Even assuming the correctness of their arguments, either that consideration for the note was unnecessary because it was under seal, or that appellee received consideration, Brief for Appellants at 13–14, 16–18, still, we decline to enforce the note against appellee, for the record discloses that the note was an unconscionable contract and therefore against public policy. *Germantown Manufacturing Co. v. Rawlinson and Rawlinson,* 341 Pa.Super. 42, 491 A.2d 138 (1985) (where confession of judgment clause in note unconscionable, court will not bind party to it); Restatement (Second) of Contracts, § 208 (1979) (court may refuse to enforce unconscionable contract). *Cf. Standard Venetian Blind Co. v. American Empire Insurance Co.,*

503 Pa. 300, 307, 469 A.2d 563, 567 (1983) ("[A] court may on occasion be justified in deviating from the plain language of a contract of insurance. *See* 13 Pa.C.S. § 2302 (court may refuse to enforce contract or any clause of contract if court as a matter of law deems the contract or any clause of the contract to have been 'unconscionable at the time it was made').").

"It is impossible to formulate a precise definition of the unconscionability concept." *Bishop v. Washington*, 331 Pa.Super. 387, 399, 480 A.2d 1088, 1094 (1984). As other courts have done, however, we turn to Judge SKELLY WRIGHT's definition:

> Unconscionability has generally been recognized to include an absence of meaningful choice on the part of one of the parties together with contract terms which are unreasonably favorable to the other party.
> *Williams v. Walker-Thomas Furniture Co.*, 350 F.2d 445, 449 (D.C.Cir.1965) (footnote omitted).

*See also Witmer v. Exxon Corp.*, 495 Pa. 540, 551, 434 A.2d 1222, 1228 (1981); *Bishop v. Washington, supra* 331 Pa.Super. at 400, 480 A.2d at 1094.

To determine whether appellee made a "meaningful choice", when she signed the note, we must consider her bargaining position and determine whether it was grossly inferior to appellants'. *Cf.* Restatement (Second) of Contracts § 208, Comment d (1979).

As already mentioned, before she signed the note appellee had heard a tape recording of Teddy accusing her husband of being the main actor in the thefts from appellants' business. N.T. 47–48. Appellee testified that she was concerned to protect her husband's name:

> And Mr. Snyder said, "Well, your husband's name will be blown up in the newspapers," that this will happen. I couldn't see this happening to Jim [her husband].
> N.T. 51.
> [Mr. Snyder] said, "I kept it out of the paper but it will be put in the paper." Jim has been too honest all his life to

> have something like this happen at this late stage. So, Jim looked over at me, he said, "Please sign it because,"‚ he says, "I don't want my name in the paper. Please." So I signed it.
>
> N.T. 51.
>
> So, this is why I went ahead and did what I did, to keep Jim's name out of the paper and to keep everything clear.
>
> N.T. 53.

Appellants, indeed, effectively concede appellee's concern to protect her husband's name; one of their arguments is that their forbearance in not going to the newspapers represented lawful consideration. Brief for Appellants at 16–18.

Appellee also testified that during the February 7th meeting, when appellants asked her husband and her to sign the note, she said that she would like to consult an attorney, but appellants dissuaded her: "Mr. Snyder told me I didn't need one, that everything was on the up and up." N.T. 52. Although it was too late, appellee did consult an attorney promptly after being informed that judgment had been confessed. N.T. 57–59.[3]

Even if we assume that appellee understood the terms of the note she was signing, and its confession clause, we cannot find that in signing it she made a "meaningful choice." Appellants had a damaging tape recording; they suggested that adverse publicity was likely to follow if she did not sign the note; her husband pleaded with her to sign it; and finally, she had no opportunity to consult with anyone not a party to the note. Her bargaining position was indeed grossly inferior to appellants'. *See and compare Germantown Manufacturing Co. v. Robert J. Rawlinson, Jr. and Joan Rawlinson, supra,* where the facts

---

**3.** *Cf. Germantown Manufacturing Co. v. Rawlinson and Rawlinson,* 341 Pa.Super. 42, 491 A.2d 138 (1985), where a similar situation prompted the following comment: "This [the case presented in *Palatucci v. Woodland,* 166 Pa.Super. 315, 70 A.2d 674 (1950) ] differs from the instant case where appellee's option of consulting counsel before executing the note was not a viable one as such an action may have been deemed 'noncompliance' by, the appellant thus resulting in the prosecution of Mr. Rawlinson which appellee so dreaded." *Id.,* 341 Pa.Superior Ct. at 50 n. 2, 491 A.2d at 142 n. 2.

were significantly similar. Mrs. Rawlinson had co-signed two notes to satisfy a loss suffered by her husband's former employer because of her husband's embezzlement. On appeal from the order opening the judgment confessed on the notes, this court found that she had a meritorious defense on the ground of unconscionability. We stated in part:

> [E]ven assuming she [Mrs. Rawlinson] read and understood the confession of judgment in all of its star-chamber ramifications, she did not *genuinely* assent to it because the clause was *adhesive....* It is difficult to conceive of a greater lack of choice than that which faced Mrs. Rawlinson.... We will not bind her to a clause to which she could not refuse her "assent."

> *Id.* 341 Pa.Super. at 59, 491 A.2d at 147–148 (emphasis in original).

The remaining question is whether the terms of the note, in particular, those terms obligating appellee to make payment, were "unreasonably favorable" to appellants. *Williams v. Walker-Thomas Furniture Co., supra.* We find that the terms were unreasonably favorable, for they gave appellants an advantage they were not entitled to. Nothing in the record indicates, and appellants do not argue, that appellee had anything to do with her husband's theft from appellants. *Cf.* N.T. 88–89. Appellants evidently did not pursue the criminal prosecution of Mr. Rogers. Instead, despite appellee's innocence of the theft, appellants sought to ensure recovery of their loss by obtaining appellee's signature to the note, thereby putting themselves in the position, they believed, of being able to execute against her resources. Appellants were aware of those resources: Mr. Rogers testified that he and Mr. Snyder had had a conversation before the note was signed in which they discussed appellee's certificate of savings as expected to yield at maturity approximately $25,000, N.T. 39; and appellee testified that after the tape recording was played, Mr. Snyder asked her whether she had any money and she admitted

that she had inherited some money from her father that she had put into a certificate of savings, N.T. 48, 49.

Whether a contract is unconscionable is a matter of law, to be determined by the court. *Bishop v. Washington, supra* 331 Pa.Super. at 399, 480 A.2d at 1094. We hold that as to appellee, the note was unconscionable. In signing the note, appellee did not make a "meaningful choice", and the terms of the note were "unreasonably favorable" to appellants. *Williams v. Walker-Thomas Furniture Co., supra.* We therefore decline to enforce the note as against public policy.

Affirmed.