**Pettinger  v.  Serino**

C.P. of Pike County, no. 1076-1996-Civil.

*Charles Kannebecker,* for plaintiff.
*Matthew D. Blumberg,* for defendant.

THOMSON, *J.,* October 16, 1996—Before the court is plaintiff Kelly Pettinger's petition for contempt. Plaintiff's petition presents a novel issue in that it is based on defendant's alleged failure to abide by a private child support agreement executed between these unmarried, cohabiting parties. Obviously, this private agreement has not been incorporated or merged into a divorce decree. Nor has the agreement otherwise been made an order of this court.

Defendant raises three arguments in opposition to the petition. First, defendant argues that he entered this agreement under duress and therefore it should not be enforced. Second, he asserts that the child support agreement should not be enforced because its terms are unconscionable. Lastly, defendant argues that since this agreement has not been made an order of this court, it is not subject to the court's contempt powers.

## DISCUSSION

Defendant initially argues that the private agreement should not be enforced since he was compelled to enter it under duress. The testimony at the August 20, 1996 contempt hearing revealed that Mr. Serino cohabited with Ms. Pettinger for a number of years. The couple has never been married but their cohabitation has produced children.

On May 11, 1996, Mr. Serino returned home to find Ms. Pettinger in a highly emotional state, accusing him of infidelity. As this was the fifth time Mr. Serino allegedly engaged in infidelity, Ms. Pettinger declared the relationship over and began to negotiate with Mr. Serino a child support agreement. During this emotional confrontation, Ms. Pettinger's parents arrived at the home.

Mr. Serino stated that he felt threatened during this confrontation. He also testified that he did not leave the residence because he was told by Ms. Pettinger that if he drove off in the truck, she would have him arrested. Additionally, Mr. Serino noted that he was prevented from leaving the house by a rainy night.

Ms. Pettinger testified that although she was in a highly emotional state, she did not coerce Mr. Serino into signing the agreement. Ms. Pettinger's parents also testified that they saw no threatening behavior by Ms. Pettinger towards Mr. Serino. We also note that on cross-examination, Mr. Serino admitted that he was able to negotiate some benefits for himself in the child support agreement.

The courts of Pennsylvania have recognized the validity of contracts entered into by nonmarried, cohabiting parties. See *Knauer v. Knauer*, 323 Pa. Super. 206, 227-28, 470 A.2d 553, 564 (1983). The *Knauer* court stated that while agreements between cohabitors "may to some extent parallel a property settlement

agreement following a divorce, the two are not the same." *Id.* at 228, 470 A.2d at 564. We do not believe that treating a child support agreement between unmarried cohabitors the same as an agreement between a divorced couple would violate Pennsylvania's public policy. Regardless of the status of the parties, the common goal of a child support agreement is to provide for the general welfare and support of the children.

When reviewing the validity of settlement agreements, we must apply the general law of contracts. *Jackson v. Culp,* 400 Pa. Super. 519, 522, 583 A.2d 1236, 1238 (1990), *alloc. denied,* 529 Pa. 621, 600 A.2d 537 (1991). (citations omitted) The creation of a valid contract requires the mutual assent of the parties. *Degenhardt v. Dillon Co.,* 543 Pa. 146, 153, 669 A.2d 946, 950 (1996). "Mutual assent to a contract does not exist, however, when one of the contracting parties elicits the assent of the other contracting party by means of duress." *Id.* (citation omitted)

In defining duress, the courts of Pennsylvania have turned to the Restatement (Second) of Contracts. Section 175 of the Restatement (Second) of Contracts states the following:

*"Section 175. When duress by threat makes a contract voidable*

"(1) If a party's manifestation of assent is induced by an improper threat by the other party that leaves the victim no reasonable alternative, the contract is voidable by the victim."

Section 176 of the Restatement (Second) of Contracts defines when a threat is improper, stating in pertinent part, as follows:

*"Section 176. When a threat is improper*

"(1) A threat is improper if

"(a) what is threatened is a crime or tort, or the threat itself would be a crime or tort if it resulted in obtaining property,

"(b) what is threatened is a criminal prosecution. . . ."

We find that this contract is not voidable on the grounds of duress. Ms. Pettinger's threat to have Mr. Serino arrested was not an improper threat under section 176 of the Restatement (Second) of Contracts. See section 176 Restatement (Second) of Contracts, comment c. That threat was for the purpose of preventing Mr. Serino from taking the truck, not for the purpose of coercing him into signing the agreement.

Mr. Serino may have been faced with the improper threat of physical harm. However, "a threat, even if improper, does not amount to duress if the victim has a reasonable alternative to succumbing and fails to take advantage of it." Section 175 Restatement (Second) of Contracts, comment b. We believe that Mr. Serino possessed the reasonable alternative of just walking out of the house and away from the situation. Therefore, we find that he was not under duress when he signed this contract.

Next, defendant argues that the agreement should not be enforced because it is unconscionable. Our research did not reveal a case in which the doctrine of unconscionability was applied to a child support agreement. However, we find that the facts of this case warrant such an application.

The parties agreed that Mr. Serino earns approximately $37,184 per year. Mr. Serino testified that he receives a net pay of $475 per week. The agreement at issue required Mr. Serino to pay $350 per week or $700 every two weeks.

"Unconscionability has generally been recognized to include an absence of meaningful choice on the part of one of the parties together with contract terms which are unreasonably favorable to the other party." *Snyder v. Rogers,* 346 Pa. Super. 505, 509, 499 A.2d 1369, 1371 (1985). (citations omitted)

To determine whether defendant made a "meaningful choice," when he signed the note, we must consider his bargaining position and whether it was grossly inferior to Ms. Pettinger's position. *Id.* (citation omitted) Given the facts recited above, we find that although Mr. Serino did not sign this contract under duress, his bargaining position was grossly inferior to that of Ms. Pettinger. Therefore, we cannot find that in signing the agreement, Mr. Serino made a "meaningful choice."

We also find that the terms of the agreement were "unreasonably favorable" to Ms. Pettinger. Mr. Serino alleged that this amount would be approximately three times the amount required to be paid by the Pennsylvania Child Support Guidelines. The child support required is also patently unreasonable in relation to Mr. Serino's weekly net pay. Therefore, we find that the amount of the child support payments required by the contract was unconscionable at the time the contract was made.

The Restatement (Second) of Contracts §208 reads, as follows:

*"Section 208 unconscionable contract or term*

"If a contract or term thereof is unconscionable at the time the contract is made a court may refuse to enforce the contract, or may enforce the remainder of the contract without the unconscionable term, or may so limit the application of any unconscionable term as to avoid any unconscionable result."

We find that in order to protect the best interests of the children, we will permit this child support agreement to stand. Applying the Restatement, we will limit the application of the unconscionable terms relating to the amount of support due.

Ordinarily, a child support agreement is modifiable by the court only when changed circumstances are established. Section 3105(b) of the Domestic Relations Code provides:

*"(b) Certain provisions subject to modification.—*A provision of an agreement regarding child support, visitation or custody shall be subject to modification by the court upon a showing of changed circumstances." 23 Pa.C.S. §3105(b).

However, the legislature and the courts of this Commonwealth have recognized that, due to public policy considerations, the courts are not entirely bound by private child support agreements. *Woodings v. Woodings,* 411 Pa. Super. 406, 414 n.4, 601 A.2d 854, 858 n.4 (1992).

Accordingly, we direct the parties to report to the Domestic Relations Department and provide the domestic relations officer all the information the officer deems necessary to address the issue. The domestic relations officer is directed to determine the proper amount of child support due under the Pennsylvania Child Support Guidelines and report to the court promptly.

Because this matter may return to us after its referral to the Domestic Relations Department, we will address whether Ms. Pettinger's petition for contempt under 42 Pa.R.C.P. 1910.1 et seq., is procedurally proper. Defendant's third argument asserts that since this agreement has not been made an order of this court, it is not subject to the court's contempt powers. This argument would have been viable had the child support agreement been executed prior to the 1988 amendments to the Divorce Code.

Before 1988, the courts recognized a legal distinction between private child support agreements "entered into voluntarily by the parties and a support order entered by a court of competent jurisdiction." *Hollman v. Hollman,* 347 Pa. Super. 289, 297, 500 A.2d 837, 841 (1985) (and the cases cited therein). At that time, private child support agreements were enforceable solely through actions in assumpsit, specific performance, or upon ob-

taining a judgment on arrears and execution against the property. *Id.* at 305-306, 500 A.2d at 846; see also, *Ashbaugh v. Ashbaugh,* 426 Pa. Super. 589, 599 n.6, 627 A.2d 1210, 1215 n.6 (1993). The contempt powers of the court were not available to enforce a private child support agreement. *Hollman, supra* at 300, 500 A.2d at 843; see also, *Sonder v. Sonder,* 378 Pa. Super. 474, 488-89, 549 A.2d 155, 162 (1988) (court refused to make enforcement of support agreements equivalent to enforcement of support or alimony orders under 42 Pa.R.C.P. 1910).

Plaintiff is proceeding in this case under 42 Pa.R.C.P. 1910.1, which was amended in 1994 to conform with the 1988 amendments to the Divorce Code. The child support agreement at issue was executed on May 11, 1995. Therefore, the amendments to the relevant rules of civil procedure and the 1988 amendments to the Divorce Code are applicable.

The courts have ruled that "the 1988 and 1990 amendments to the Divorce Code now expressly permit parties to enforce an agreement through the remedies provided in the Divorce Code, which include the court's powers of contempt and wage attachment." *Ashbaugh, supra* at 599 n.6, 627 A.2d at 1215 n.6 (1993); see also, *Ballestrino v. Ballestrino,* 400 Pa. Super. 237, 247 n.2, 583 A.2d 474, 478 n.2 (1990).

42 Pa.R.C.P. 1910.1 reads as follows:

*"Rule 1910.1. Scope. Definitions*

"(a) Except as provided by subdivision (b), the rules of this chapter govern all civil actions or proceedings brought in the court of common pleas to enforce a duty of support, or an obligation to pay alimony pendente lite.

"(b) The rules of this chapter shall not govern

"(1) an action or proceeding for support based upon a contract or agreement which provides that it may

not be enforced by an action in accordance with these rules, . . . ."

The March 30, 1994 explanatory comment to Rule 1910.1 states that

"Section 3105(a) of the Divorce Code provides that all agreements relating to matters under the code, whether or not merged or incorporated into the decree, are to be treated as orders for the purpose of enforcement unless the agreement provides otherwise. Subdivision (b)(1) is amended to conform to the statute."

In 1988, section 3105(a) of the Divorce Code was amended to read as follows:

*"(a) Enforcement.*—A party to an agreement regarding matters within the jurisdiction of the court under [the Divorce Code], whether or not the agreement has been merged or incorporated into the decree, may utilize a remedy or sanction set forth in [the Divorce Code] to enforce the agreement to the same extent as though the agreement had been an order of the court except as provided to the contrary in the agreement."

The courts have construed section 3105 as allowing marital settlement agreements to be enforced through a civil contempt complaint even though it has not been incorporated or merged into, or reduced to, an order. In *Jackson, supra* at 523, 583 A.2d at 1238, the court noted that section 3105, "does not preclude a complaint in assumpsit [based upon a breach of the marital settlement agreement]; it merely facilitates enforcement of the [marital settlement agreement] by providing an alternative enforcement vehicle in the form of civil contempt complaint. [Section 3105] neither adds to nor subtracts from the substantive rights of the parties under their [marital settlement agreement]; rather, it merely provides an additional procedural vehicle for the enforcement of their respective rights under their [marital settlement agreement]."

*McGinnis v. McGinnis,* 439 Pa. Super. 372, 654 A.2d 563 (1995), was another case in which the Superior Court was faced with a complaint for child support based upon a private support agreement. In remanding the case back to the trial court, the Superior Court stated, "we are cognizant that on remand the amendments to Pa.R.C.P. 1910.1(b)(1) which became effective on July 1, 1994 will permit enforcement of the parties' child support agreement directly through the action in support." *Id.* at 377-78, 654 A.2d at 566.

The *McGinnis* court noted that the trial court's power to enforce the agreement is based upon 23 Pa.C.S. §3105(a). *Id.*

The child support agreement at issue does not provide that it may not be enforced by an action in accordance with the applicable rules. Therefore, we find that this child support agreement may be enforced through civil support contempt proceedings. However, due to our finding that the terms of this child support agreement are unconscionable, we cannot reach the issue of whether Mr. Serino is in contempt of those terms.[1]

On October 1, 1996, Ms. Pettinger presented a motion for order for special relief. In that motion, Ms. Pettinger requested additional remedies under Pa.R.C.P. 1910.25 and 1910.20 for Mr. Serino's contempt of their agreement. We find that these additional remedies are permissible along with those available under the Divorce Code. However, as stated above, we cannot reach the

---

1. In any event, Ms. Pettinger did not offer adequate evidence of Mr. Serino's alleged ability to comply with the agreement and his wilful failure to do so. See *Sinaiko v. Sinaiko,* 445 Pa. Super. 56, 64-65, 664 A.2d 1005, 1009-1010 (1995). Rather, the contempt hearing in this matter focused on the validity of both the agreement and the procedural vehicle used by Ms. Pettinger to enforce the agreement.

issue of whether they are warranted at this time. Therefore, plaintiff's petition and motion are denied.

## ORDER

And now, October 16, 1996, upon consideration of plaintiff Kelly Pettinger's petition for contempt, briefs filed thereto and hearing held thereon, plaintiff's petition is hereby denied.

Furthermore, plaintiff's motion for order for special relief filed on October 1, 1996, is hereby denied.

Furthermore, the parties and their respective counsel are hereby ordered to cooperate with the Pike County Domestic Relations Department, which shall conduct an office conference and proceed in a manner similar to that required under 42 Pa.R.C.P. 1910.11. While the main focus of that office conference should be the determination of the support due under the guidelines, the parties and counsel are encouraged to reach an agreement under the procedure enunciated in 42 Pa.R.C.P. 1910.11(d).

Finally, in the event that the parties are unable to reach an agreement, this matter shall proceed as provided in 42 Pa.R.C.P. 1910.11.