OPINION OF THE COURT
Sebastian Leone, J.
This is a declaratory judgment action that was tried on an agreed statement of facts.
Plaintiff is the husband of Miriam Yankelevitz (Miriam). On October 10, 1976, Miriam was severely injured while riding as a passenger in an automobile operated by plaintiff. The automobile was owned by Novel Package Corporation (Novel), one of plaintiff’s employers. Defendant Royal Globe Insurance Company (Royal) is the primary insurance carrier, under a policy of insurance issued to Levon Products Inc. (Levon), plaintiff’s coemployer, wherein Novel, plaintiff and others are named as additional insureds. Defendant Aetna Casualty and Surety Company (Aetna) is the excess carrier.
Miriam instituted suit against Novel for the sum of $1,000,000 claiming that she had sustained permanent injuries. Novel commenced a third-party action against plaintiff and one Max Mishan, the driver of the other automobile involved in the collision with the insured vehicle operated by plaintiff. Plaintiff in this action seeks to compel defendants “to provide him with liability coverage”. Both defendants have disclaimed liability pursuant to “Section 167 subdivision (3) of the insurance law of the State of New York”.
Plaintiff’s principal attack upon defendant’s defenses is that subdivision 3 of section 167 of the Insurance Law violates plaintiff’s constitutional rights under the equal protection laws of both the Federal and State Constitutions.
Subdivision 3 of section 167, as originally enacted in 1937 (L 1937, ch 669) and then known as subdivision 3-a of section 109, reads: “No such policy, however, heretofore or hereafter issued shall be deemed to insure against any liability of an insured for injuries to his or her spouse or for injury to property of his or her spouse, unless express provision for such insurance is included in the policy.” *638 This automatic exclusion of coverage, if not specifically provided for in the policy to the contrary, was retained in the amendment in 1941 and renumbered as subdivision 3 of section 167, and in the further amendment in 1976, which limited the exclusion to “only where the injured spouse, to be entitled to recover, must prove the culpable conduct of the insured spouse.”
Examining former subdivision 3-a of section 109 and subdivision 3 of section 167 of the Insurance Law in the light of the appellate court declarations of proper legislative intent in the enactment thereof, this court is constrained to yield to the appellate courts and to observe the mandate that a statute should not be struck down unless “and only when the unconstitutionality is shown beyond a reasonable doubt” (Defiance Milk Prods. Co. v Du Mond, 309 NY 537, 541).
ISSUES AS TO VALIDITY OF SUBDIVISION 3 OF SECTION 167 ON GROUNDS OTHER THAN CONSTITUTIONALITY
Is the statute as originally enacted and amended otherwise valid? This question and the issues that will be presented have not been raised by any of the parties and is being done on the court’s own initiative, the reasons for which shall hereinafter become apparent.
The court is fully cognizant of the unanimity of our appellate courts in sustaining the validity of subdivision 3 of section 167 since its original enactment in 1937, but, only on the matters presented and considered in each of those cases. This court is further cognizant of the most recent decision of the Appellate Division, Second Department, in Schwartz v Lipkin & Son (76 AD2d 141); but again, that court’s opinion is limited to the issues therein.
A. INTENT OF LEGISLATURE AS VIEWED BY THIS COURT
Initially, the Legislature, in recognizing the inequity of the ancient concept of barring interspousal causes of action, enacted chapter 669 of the Laws of 1937 (now section 3-313 of the General Obligations Law), to grant a spouse the right to pursue a cause of action against the other for injury to person and property, but it had to consider the rights of insurance carriers with thousands of policies *639 outstanding. They had to be protected against unanticipated and uncontracted for coverage on such causes of action; Understandably, the Legislature created the beneficent bar to claims predicated on policies “heretofore * * * issued [those policies] shall [not] be deemed to insure * * * for injuries to his or her spouse * * * unless express provision for such insurance is included in the policy.” (Emphasis supplied.) But why did the Legislature include the wholly unnecessary and dangerous wrecking invisible shoal of “hereafter issued”? Once the policies that were “heretofore issued” expired, it then became a simple matter for the insurers to include in all policies “hereafter issued”, a standard clause excluding inter-spousal injury coverage. In the years that followed, elemental logic and basic experience dictated against the amendments of 1941 and 1976 (Insurance Law, § 167, subd 3). Throughout those years the courts had numerous causes of undue hardship where the only consideration was the fact of marriage. The marriage a day before or a day after, or the effectiveness of a divorce decree a day before or a day after became the determining factor, and not that the insurers should or should not have included the bar of the exclusionary clause in the policy or inserted some cautionary notice of the existence of subdivision 3 of section 167.
In chapter 669 of the Laws of 1937, the Legislature, and in retrospect to this court’s amazement, amended section 94-k of the Vehicle and Traffic Law (further amended and renumbered in 1959 as section 388, and further amended in 1976), permitted insurers issuing “Motor vehicle liability policies” not to “include insurance against any liability of the insured for injuries to his or her spouse or for injury to property of his or her spouse”.
Thus, by legislative grace “policies of insurance issued to motor vehicle owners need not insure against injuries to the spouse of the owner” (Fuchs v London & Lancashire Ind. Co. of Amer., 258 App Div 603, 605). Yet, “[b]oth statute and public policy require that motorists be insured against the risks of automobile travel” (General Acc. Ins. Group v Cirucci, 46 NY2d 862, 864). “The whole object of compulsory automobile insurance is to assure the protec *640 tian of members of the' public, who are innocent victims of motor vehicle accidents, by providing compensation for and protection from tortious wrongs committed against them” (Rosado v Eveready Ins. Co., 34 NY2d 43, 47). Is it possible that no one considered a spouse a likely innocent victim with a just claim and that she may be barred from asserting her meritorious cause of action lest her husband be ruined financially by a third-party action against him for the amount of her recovery? Was it the intent of the Legislature to give a spouse, who may be a wage earner or a small businessman but one bitter choice, namely, that of suffering the indignity of insolvency, or worse the destruction of his life’s work in building his little but profitable business, so that he may have the wherewithal for his wife’s extensive medical, hospital and rehabilitative expenses and further provide for his family’s future needs for survival? Can it be said that such was the legal right of “election of remedies” that the Legislature intended in the enactment of chapter 669 of the Laws of 1937 and as thereafter amended? This court does not so believe and will so demonstrate.
The compulsory insurance law “Motor Vehicle Financial Security Act” is set forth in article 6 of the Vehicle and Traffic Law. Subdivision (2) of section 310 of the Vehicle and Traffic Law declares that the Legislature is concerned “over the rising toll of motor vehicle accidents and the suffering and loss thereby inflicted. The legislature determines that it is a matter of grave concern that motorists shall be financially able to respond in damages for their negligent acts, so that innocent victims of motor vehicle accidents may be recompensed for the injury and financial loss inflicted upon them.” It is to be noted that in this legislation a spouse is not excluded from the concern of the Legislature as a possible innocent victim of motor vehicle accidents and as one to be recompensed for injury and financial loss. Section 311 of the Vehicle and Traffic Law (“Definitions”) defines “proof of financial security” as “proof of ability to respond in damages for liability arising out of the ownership, maintenance or use of a motor vehicle as evidenced by an owner’s policy of liability insurance” (Vehicle and Traffic Law, § 311, subd *641 3) . The “owner’s policy of liability insurance” requires that “Every such owner’s policy of liability insurance shall provide insurance * * * against loss from the liability imposed by law for damages including damages for care and loss of services, because of bodily injury to or death of any person” (Vehicle and Traffic Law, § 311, subd 4) . Section 312 bars the registration in this State of a motor vehicle “unless the application for such registration is accompanied by proof of financial security which shall be evidenced by a certificate of insurance”. Again there are no words excluding a spouse as an innocent victim or barring a spouse from qualifying as an innocent victim. In fact, the contrary may readily be envisaged; first by specifically “including damages for care and loss of services” and secondly, by the express language of section 311 (subd 4, par [a]) that “[n]othing contained in such regulation or in this article shall prohibit any insurer from affording coverage under an owner’s policy of liability insurance more liberal than that required by said minimum provisions” (emphasis added).
B. NECESSITY OF HEARING TO DETERMINE REPUGNANCY OF SUBDIVISION 3 OF SECTION 167 WITH LEGISLATIVE INTENT
The agreed statement of facts submitted to this court contains no survey on whether, under the permissive legislation of subdivision 4 of section 388 of the Vehicle and Traffic Law, no policies of insurance are in fact issued containing specific spouse coverage. On a hearing such fact may be established. However, this court fully alert to the mundane affairs of life, must take judicial notice that various forms of nonprofitable policies of insurance are not issued. The Legislature recognized such fact when it adopted the assigned risk plan and when it created the Motor Vehicle Accident Indemnification Corporation Law for victims of uninsured motor vehicle, “hit and run motorists” (Insurance Law, § 600 et seq.). Similarly, with respect to fire insurance, the Legislature was compelled to create the New York Property Insurance Underwriting Association, and with respect to burglary (forceful break-in), robbery and theft insurance, Congress had to create the Federal Crime Insurance — Federal Emergency Management Agency to provide such insurance.
*642 If it be established that, by reason of the permissive legislation, insurers have availed themselves of the statutory right not to furnish coverage to a spouse to protect against a claim over by a carrier on the other spouse’s suit, then subdivision 3 of section 167 must be re-examined to ascertain whether it has become repugnant to the intent of the Legislature.
C. HEARING TO DETERMINE REJECTION OF SUBDIVISION 3 OF SECTION 167 AS BEING IRRECONCILIABLE WITH LATER STATUTES AND UNCONSTITUTIONAL UNDER CURRENT CONDITIONS
Elementary rules of statute construction dictate that a “section may not stand alone. It is to be read and applied in connection with every other section of the act. All must have their due and conjoint effect. Each must be so far qualified and limited by each other as that all may have operation in harmony, if so it may be. And each must be kept in subservience to the general intent of the whole enactment.” (Ansonia Brass & Copper Co. v New Lamp-Chimney Co., 53 NY 123, 125, affd 91 US 656.) Thus, we may not give “absolute and unqualified effect to a single section or clause of a statute [Insurance Law, § 167, subd 3], however direct, plain and unambiguous considered by itself alone *** if there are other provisions inconsistent with a literal and unrestricted interpretation of such * * * section, [and if] the repugnancy is irreconcilable * * * it is the duty of the court to preserve the paramount intention *** although this may lead to the rejection of some subordinate and secondary provision” (People ex rel. Mason v McClave, 99 NY 83, 89).
Section 142 of the Insurance Law is entitled “Policy to contain entire contract”. Subdivision 1 thereof provides, “Every policy of life, accident or health insurance * * * delivered *** in this state shall contain the entire contract between the parties, and nothing shall be incorporated therein by reference to any constitution, by-laws, rules, application, or other writings, unless a copy thereof is endorsed upon or attached to the policy or contract when issued.” (To same effect, see, also, Vehicle and Traffic Law, § 345, subd [i], par [2].) Facetiously, yet tragically, insurers sanctimoniously observe this legislative *643 mandate by not incorporating by reference or indorsing or attaching a copy of subdivision 3 of section 167 in their policies of motor vehicle insurance. It is obvious that subdivision 1 of section 142 was enacted “so the insured may know all its terms by reading it or having it read, then correct wrong answers to questions asked *** The history of this subdivision * * * was clearly to protect the insured or his beneficiary”. (Helfaer v John Hancock Mut. Life Ins. Co., 51 Misc 2d 869, 873, affd 26 NY2d 699.) Manifestly, the insured or the literate person selected to read the motor vehicle policy, having no knowledge of subdivision 3 of section 167, one little subdivision in the Insurance Law consisting of 695 sections and numerous subdivisions thereunder, is not given the opportunity to correct the policy’s insufficient coverage.
In harmony with the legislative intent to protect the consumer insured, section 313 (subd 1, par [a]) of the Vehicle and Traffic Law entitled “Notice of termination” [of a motor vehicle policy] provides “Every such notice of termination for any such cause whatsoever sent to the insured shall include in type of which the face shall not be smaller than 12 point” (emphasis added). Rhetorically, what notice and what size of type must insurers give to protect their right to superimpose subdivision 3 of section 167 in every motor vehicle policy?
Section 302 of the Personal Property Law captures the spirit of consumer protection. Essential to the validity of retail installment contracts, various headings and clauses must be printed “in a size equal to at least 10-point bold type”. McKinney’s Consolidated Laws of New York Annotated demonstrates the clarity of the 10-point bold type and how it gives each of the requisite provisions an almost neon-lit conspicuousness.
Section 5-702 of the General Obligations Law entitled “Requirements for use of plain language in consumer transactions” provides that “a. Every written agreement *** must be 1. Written in a clear and coherent manner using words with common and everyday meanings; 2. Appropriately divided and captioned by its various sections.” This court will not belabor this opinion with a recounting of the history and background events that *644 impelled the enactment of this legislative act. Yet, strange as it may appear, there has been no significant outcry on the imposition on an unwary consumer purchaser of a policy of motor vehicle insurance of the invisible exclusionary clause found only in a law book or in the records of the Legislature.
This court concludes that if it be established that full coverage is not readily obtainable by a spouse so as to afford protection against a righteous claim by the other spouse, then subdivision 3 of section 167 must be reconsidered and re-evaluated for its irreconcilability with the Legislature’s paternalistic consumer statutes and also as to its constitutionality in function. A spouse may not be effectively prevented from seeking proper owner insurance coverage, be it at a higher premium. Subdivision 3 of section 167 of the Insurance Law and section 388 of the Vehicle and Traffic Law may not be welded into an instrument of discrimination, of deprivation of equal opportunity to be fully insured, and of equal protection under our law.
D. HEARING TO DETERMINE UNCONSCIONABILITY OF INCLUSION OF SUBDIVISION 3 OF SECTION 167 IN MOTOR VEHICLE
LIABILITY POLICIES
The hardship that section 388 of the Vehicle and Traffic Law may cause with the inclusion of subdivision 3 of section 167 of the Insurance Law raises the question of whether such a contract of insurance with an invisible but imposed exclusionary clause constitutes an unconscionable contract. Again, extensive research by this court has not disclosed any reported cases wherein this issue was presented.
Section 2-302 of the Uniform Commercial Code, entitled “Unconscionable Contract or Clause” provides “(1) If the court as a matter of law finds the contract or any clause of the contract to have been unconscionable at the time it was made the court may refuse to enforce the contract, or it may enforce the remainder of the contract without the unconscionable clause * * * (2) When it is claimed or appears to the court that the contract or any clause thereof may be unconscionable the parties shall be afforded a *645 reasonable opportunity to present evidence as to its commercial setting, purpose and effect to aid the court in making the determination.” (Emphasis added to indicate that no claim of unconscionability was made by plaintiff, but is considered as it “appears to the court”.)
Unconscionability of contract is not a new legal concept embodied in the Uniform Commercial Code for protection of the consumer. “The doctrine of unconscionability has been discussed by the courts and the commentators at great length * * * [T]he Uniform Commercial Code simply codified the doctrine, which was used by the common-law courts to invalidate contracts under certain circumstances * * * The concept of unconscionability must necessarily be applied in a flexible manner depending upon all the facts and circumstances of a particular case” (Matter of Friedman, 64 AD2d 70, 84-85).
The application of the doctrine of unconscionability has not been limited to sales contracts. “At first blush one might assume that the Uniform Commercial Code does not reach franchise or distributorship agreements * * * However, the courts have not been reluctant to enlarge the type of commercial transactions clearly encompassed within the spirit and intendment of the statute” (Division of Triple T Serv. v Mobil Oil Corp., 60 Misc 2d 720, 727). Thus, the broad mantle of the Uniform Commercial Code has been to cover many and varied business transactions. See Industrialease & Automated Scientific Equip, v R.M.E. Enterprises (58 AD2d 482); Nu Dimensions Figure Salons v Becerra (73 Misc 2d 140); Albert Merrill School v Godoy (78 Misc 2d 647); Miner v Walden (101 Misc 2d 814), and Joyner v Albert Merrill School (97 Misc 2d 568, 574) wherein the court stated that “The doctrine of caveat emptor has given way, at least in part, to the doctrine of caveat venditor in recognition of the fact that many consumers, by reason of their lack of education, lack of experience, and limited bargaining power, are not in equal bargaining positions with the vendors with whom they deal”.
This court holds that the sale of insurance and contracts of insurance come within the scope of section 2-302 of the Uniform Commercial Code.
*646 Within the broad spectrum of consensus, many a purchaser of insurance may not be conversant or literate in the English language and unquestionably not on equal footing with a trained insurance draftsman, nor in an equal bargaining position.
This fact has been recognized by our Legislature in its protective legislation requiring specific minima in various types of insurance policies and making it mandatory that “No motor vehicle liability policy shall be issued or delivered in this state until a copy of the form of policy shall have been on file with the superintendent of insurance”. (Vehicle and Traffic Law, § 345, subd [h]; see, also, Insurance Law, §§ 142, 143, 167.)
Our courts have similarly recognized the inferior position of an insured and established the rule that the language of a contract of insurance must be construed “by what it means to the ordinary businessman, not by what it might convey on careful analysis to a trained lawyer * * * [and] it should [be] so worded as to be understood not by an insurance expert, but by a person of ordinary business intelligence” (Whiteside v Insurance Co. of State of Pa., 274 App Div 36, 38-39, mot for lv to opp den 298 NY 938; quoted with approval in Tyroler v Continental Cas. Co., 31 AD2d 8, affd 25 NY2d 710). In addition, “[i]f an exclusion of liability is intended which is not apparent from the language employed, it is insurer’s responsibility to make such intention clearly known” (Aetna Cas. & Sur. Co. v General Cas. Co. of Amer., 285 App Div 767, 770). See, also, Matter of Country-Wide Ins. Co. v Wagoner (45 NY2d 581, 587), particularly Judge Fuchsberg’s descriptive observation “of the sophisticated insurance industry, sensitive to the slightest legislative breeze”, and again in Mt. Vernon Fire Ins. Co. v Travelers Ind. Co. (47 NY2d 575, 580), “Given the exceptionally strong principle of construing exclusions strictly against an insurer, whose form policy language is not only its own but ‘non-negotiable’ as well”. As is best summarized in State Farm Mut. Auto. Ins. Co. v Smith (167 Cal Rptr 410, 419), “One must, however, recognize that insurance contracts are not made or entered into in the same manner as other contracts. They are, in the usual form, completely standardized, *647 printed documents which have been skillfully prepared and which the customer has no opportunity to object to. There is no provision for variance from the standardized * * * printed forms or clauses. The only option available to the purchaser is to contract oh the company terms or to not contract. In this sense they are contracts of adhesion drawn in terms from which no deviation is permitted.”
Thus, if factual circumstances be established at a hearing that: (a) defendants do not issue motor vehicle liability insurance policies with interspousal coverage; (b) plaintiff was not given any notice nor had any knowledge of the existence of subdivision 3 of section 167; (c) plaintiff was given no opportunity to bargain for interspousal coverage, then the superimposing of the exclusion of inter-spousal coverage constitutes an inclusion of an unconscionable contract clause against plaintiff.
THE POLICIES ARE BINDING CONTRACTS AS WRITTEN
The concluding issue — are the policies of defendants, as issued and annexed to the complaint, valid contracts to be enforced as written?
The policy of defendant Royal consists of 28 pages, with many fine-print clauses. The court, in reading, interpreting and determining the contract of insurance, will hallow the teaching of Mr. Justice Shientag in Whiteside v Insurance Co. of State of Pa. (274 App Div 36, 38-39, supra), and consider each page and each clause “by what it means to the ordinary businessman, [and] not by what it might convey on careful analysis to a trained lawyer * * * [or as] understood not by an insurance expert, but by a person of ordinary business intelligence.”
The heading on the Royal policy reads as follows: “These declarations when combined with the general provisions and the coverage part(s) and endorsements designated herein complete the contract of insurance numbered below” (emphasis added to indicate bolder print). Page 2 bears the heading “The following does not form a part of the policy and is furnished for information only” (emphasis added to indicate bolder print). Then follows a full page of definition of terms. Page 3 contains no matter relevant to the issues. All other such pages will be omit *648 ted from discussion. Page 4 has two captions (a) “comprehensive automobile liability insurance” and (b) “general provisions complete the contract of insurance.” Further, on page 4, the policy contains a heading in conspicuous type, “Exclusions”, and is then followed by a subheading “This insurance does not apply.” Below these headings are a number of different clauses of exclusion, none of which refer to noncoverage of this suit by plaintiff.
Beginning with page 6 there are indorsements to the policy-extra insurance coverage. Some of the pages bear the similar heading “general provisions complete the contract of insurance.” It is to be noted that in these indorsements, namely, “automobile medical payments insurance” (pp 6, 7), “protection Against uninsured motorist insurance” (pp 8, 9, 10, 11), “comprehensive AUTOMOBILE LIABILITY INSURANCE BASIC AUTOMOBILE LIABILITY INSURANCE AUTOMOBILE MEDICAL PAYMENTS INSURANCE” (pp 19, 20), a spouse is included and none of the exclusionary clauses limit the rights or benefits of a spouse.
The inclusion of the spouse is more pronounced in pages 21 and 22, for on those pages, not only are the names of each principal of Levon (the insured) set forth, but also, each of their respective wives, including plaintiff’s wife, Miriam. Of greater significance, pages 23 and 24, captioned “NEW YORK PERSONAL INJURY PROTECTION ENDORSEMENT”, statutes are referred to for the first time and are particularly cited to deny or limit a recovery. The statutes cited are sections 123, 311, 1192 and articles 6 and 7 of the Vehicle and Traffic Law, and subdivision j of section 601, section 673, and article 18 of the Insurance Law.
The policy, as above summarized, must, as a matter of fundamental contract law, be construed by what is contained within the four corners of the policy, particularly when no claim is made that any of the language used is ambiguous. Within those four corners, the policyholder is repeatedly and emphatically informed that the policy as issued is “complete”. “Complete” is an elementary word which can only mean and convey to the “ordinary businessman” with “ordinary business intelligence” what *649 Webster’s Third New International Dictionary Unabridged defines as “complete * * * la: possessing all necessary parts * * * not lacking anything necessary: Entire, Perfect * * * 2. brought to an end or to a final or intended condition”. Thus, Royal, in its 28 pages of fine print, “brought to an end or to a final or intended condition” the contract of insurance issued to plaintiff. That contract by Royal’s use of the word “complete” was “not lacking anything necessary” and was “entire” and “perfect.”
If there be any doubt as to this court’s construction of Royal’s policy, that doubt is eliminated by Royal’s prominent “headline” caption “comprehensive automobile liability insurance”. “Comprehensive”, as defined by Webster as relates to insurance “cover[s] all hazards of a given type with the exception of individual hazards specif, excluded”. Judge Dye, in Tonkin v California Ins. Co. of San Francisco (294 NY 326, 329), defined “comprehensive” to include “those damages which an ordinary individual would reasonably and naturally regard as incidental to or flowing from the hazard insured against.” This court, therefore, construes “comprehensive automobile liability insurance” as full coverage for any and all automobile liability, except as is specifically excluded in the policy.
Of similar nature is an “ ‘all risk’ policy [which] has been defined as one which ‘provides coverage * * * against any loss without putting upon the insured the burden of establishing that the loss was due to a peril falling within the policy’s coverage’ * * * It is clear * * * that a small boat owner who takes out an ‘all risk’ policy which does not exclude theft has a right to assume he purchased coverage for loss by theft” (Tuchman v Public Serv. Mut. Ins. Co., 88 Misc 2d 336, 338).
By parity of reason, plaintiff, who had himself specifically named as an insured in a “comprehensive automobile liability insurance” policy “has a right to assume he purchased coverage for” his wife’s claim against him.
Moreover, Royal’s choice of the designation on its policy as “comprehensive” must be deemed to have been in *650 tended to convey to the “ordinary businessman” that this policy covers all risks except those specifically set forth under its heading “Exclusions” or under its heading “The following does not form a part of the policy”.
Throughout the policy and in the different indorsements Royal very meticulously included various clauses of exclusion, but none that bar this action. Those indorsements specifically include a spouse and in totality evince but one purpose, but one motive on behalf of plaintiff and his coprincipals of Levon, and that is that they wished for themselves a policy that shall contain “Comprehensive” insurance that shall fully cover themselves and their respective wives for “all hazards * * * with the exception of individual hazards [specifically] excluded.” Any other construction must imply an intent of fraud, an intent to mislead, an intent to lull the unwary into believing that the “complete” contract is not in fact complete; that “comprehensive” coverage is not the full coverage printed in the policy. There was no hesitancy to specifically cite numerous statutes, but not a syllable about subdivision 3 of section 167 of the Insurance Law.
This court has dwelt at length on the Royal policy as it best demonstrates and supports this court’s conclusion and as it permits summary comment of Aetna’s policy.
The Aetna policy, consisting of 17 pages with much fine print, contains a similar and perhaps standard heading, “These declarations and the General Provisions and Endorsements complete this excess indemnity (umbrella) policy.” The plaintiff is one of the named insureds in that policy.
Aetna, more so than Royal, apparently spared no effort in setting forth its numerous clauses of exclusion. Practically all of page 3, more than half of page 4, more than half of page 9, etc., contain thousands of words of exclusion (by quick count); yet there is not one word that refers to subdivision 3 of section 167.
Repeatedly, and with emphasis, our appellate courts have stated: “If an exclusion of liability is intended which is not apparent from the language employed, it is the insurer’s responsibility to make such intention clearly *651 known” (Aetna Cas. & Sur. Co. v General Cas. Co. of Amer., 285 App Div 767, 770). Restated in Sperling v Great Amer. Ind. Co. (7 NY2d 442, 450), and to which that court added, “ Tf the intent was to exclude’ coverage * * * ‘it would have been easy to say so’ ”. See, also, Miller v Continental Ins. Co. (40 NY2d 675, 679), particularly the court’s further declaration, “It is well to remember too that ‘the right of private contract is no small part of the liberty of the citizen, and the usual and most important function of courts of justice is rather to maintain and enforce contracts, than to enable parties thereto to escape from their obligation on the pretext of public policy, unless it clearly appears that they contravene public right or public welfare’ ”.
This court firmly believes that to insert into a policy a clause of exclusion which does not “reflect that meaning which the insured was led to believe or had reason to believe the language meant at the time he entered into the contract [constitutes] ‘Processes of construction [that] may not be resorted to for the purpose of reading into the [policy] an intention not expressed or legitimately to be implied from the language used’ ” (Walters v Great Amer. Ind. Co., 12 NY2d 967, 969). “An insurer may not accept premiums under the provisions of an ambiguous policy which the insured may be justified in believing provides a particular form of coverage and then avoid liability by arguing that the policy is inapplicable to the contingency” (Murray Oil Prods, v Royal Exch. Assur. Co., 21 NY2d 440, 445).
Royal and Aetna carefully, meticulously, and at great length spelled out, in unmistakable language, the exact coverage, the limitations thereon, the conditions thereto, and the exclusions that they wished for the insured to read or have read, interpreted and understood as the contract of insurance between them, the “complete contract of insurance” containing “comprehensive automobile LIABILITY INSURANCE.”
The Legislature, in enacting subdivision 3 of section 167 never intended to present to the insurance industry a means by which all of the consumer protective legislation may be frustrated, nor grant to an insurance company a *652 talismatic sword that can destroy an honest claim of an innocent consumer. To hold otherwise is to grant judicial sanction to a vehicle, a stratagem for the perpetration of fraud with respect to policies “hereafter issued”.
This court will not lend its cloak to mask from the uninformed the existence of a small subdivision in an entire body of law that destroys a contract; that frustrates all of the paternalistic legislation of the past decades; that makes a mockery of the “plain language in consumer transactions law,” and that is against the public policy and inimical to public welfare.
Defendants, if they “intended to have the right to resurrect the [exclusion] clause for [themselves], it would have been a simple matter for [them] to have said so in so many words, or indeed, to have reiterated the exclusionary language in [their] own policies]” (Mt. Vernon Fire Ins. Co. v Travelers Ind. Co., 47 NY2d 575, 580). Not having done so, this court holds that defendants have waived and indeed have bargained away their right to include subdivision 3 of section 167 of the Insurance Law as an exclusion in their “complete” contract of “comprehensive” insurance.
This court holds that the policies annexed to the complaint are valid and binding as written and plaintiff is entitled to a judgment for the relief requested in the agreed statement of facts.