480 A.2d 1088

**Robert R. BISHOP and Bailey Bishop, Administrators of the Estate of John Leboutillier Bishop, Appellants,**

**v.**

**Walter WASHINGTON and Nationwide Insurance Company,**

Superior Court of Pennsylvania.

Argued Oct. 7, 1983.

Filed July 6, 1984.

388

Fred T. Magaziner, Philadelphia, for appellants.

William J. Gallagher, West Chester, for appellees.

Before SPAETH, President Judge, and WICKERSHAM, BROSKY, ROWLEY, WIEAND, JOHNSON and HOFFMAN, JJ.

ROWLEY, Judge:

In this declaratory judgment action, appellants, the Administrators of the Estate of John Leboutillier Bishop (Administrators), requested the trial court to determine whether the Estate was entitled to receive payment up to the limit of liability coverage for bodily injury under *each* of *two*

automobile insurance policies issued by Nationwide Insurance Company (Nationwide) despite the clear language contained in exclusionary clauses in each of the policies which prohibited double recovery. Appellants contend that the $25,000 liability coverage limit under one policy should be "stacked" upon the $25,000 liability coverage limit under the second policy, thereby obligating Nationwide to pay a total of $50,000 for injuries sustained by the Administrators' decedent.

The Administrators and Nationwide filed Cross Motions for Summary Judgment based upon the pleadings, the insurance policies and Nationwide's Answers to Interrogatories. The trial court denied the Administrators' motion and granted Nationwide's motion, holding that Nationwide was only obligated to pay the Administrators the limit of liability coverage for loss due to bodily injury under *one* policy of insurance. We granted en banc review to consider the application of this Court's decision in *Hionis v. Northern Mutual Insurance Co.*, 230 Pa.Super. 511, 327 A.2d 363 (1974) to the circumstances of this case. Upon a thorough review of the record, we affirm.

The principles governing an order entering summary judgment, and an appeal therefrom, are well settled. Summary judgment will be granted only "if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Pa.R.C.P. 1035(b). The trial court must accept as true all well-pleaded facts, resolving any doubts regarding the existence of a genuine issue of material fact against the moving party. *Carrollo v. Forty-Eight Insulation, Inc.*, 252 Pa. Super. 422, 381 A.2d 990 (1977). On appeal, we must examine the record in the light most favorable to the appellant. *Speyer, Inc. v. Goodyear Tire & Rubber Co.*, 222 Pa.Super. 261, 295 A.2d 143 (1972).

The undisputed facts as they appear from the record in this case are as follows. Appellants' decedent, John L.

Bishop, died from injuries he sustained on December 15, 1974, when his Volkswagen was struck from the rear by a bus driven by Walter Washington (Washington) and owned by the First Baptist Church of Coatesville. At the time of the accident, Washington was the owner of an automobile and a truck. Both of Washington's vehicles were insured by Nationwide under separate, but identical policies. The policy terms provided, *inter alia,* liability coverage for property damage and bodily injury in the event that the insured was involved in an accident while driving a "non-owned" motor vehicle. Liability coverage for bodily injury under each policy was limited to $25,000 per person. In addition, the policies included an "other insurance" provision which stated, in pertinent part:

> For losses involving the use of other motor vehicles, we will pay the insured loss not covered by other insurance. *If Property Damage or Bodily Injury Liability coverage in more than one policy applies to a loss, we will pay only up to the highest limit in any one policy.* (Emphasis added)

This provision was listed in the policy under the general heading of "Limits of Payment".

The bus involved in this accident was covered by an insurance policy issued to First Baptist Church of Coatesville by General Accident Group. Following settlement negotiations, General Accident Group paid the Administrators $50,000—the limit of liability coverage under their policy. The Administrators then demanded a total payment of $50,000 from Nationwide on the ground that Nationwide was liable for $25,000 under the policy issued on Washington's car and an additional $25,000 under the policy issued on Washington's truck.

Nationwide paid $25,000 to the Administrators under the terms of one policy, but refused to pay an additional $25,000 under the second policy. The Administrators filed this declaratory judgment action to recover the additional $25,000. Nationwide maintains that it is only liable for the highest coverage limit in any one policy pursuant to the

express limitation contained in the "other insurance" provision.

The parties to this appeal agree that appellant's damages would be in excess of $100,000, if the case were tried. We point out, however, that a General Release was executed by the Administrators and filed in the court below on July 2, 1980. That document provides:

[The Administrators] for and in consideration of TWENTY-FIVE THOUSAND (25,000.00) DOLLARS payable immediately and the additional sum of TWENTY-FIVE THOUSAND ($25,000.00) DOLLARS if a court of competent jurisdiction shall determine that the defendant, WALTER WASHINGTON'S limit of liability shall be a combined total of $50,000.00/$100,000.00 because of insuring two separate vehicles with Nationwide ... do hereby remise, release and discharge, WALTER WASHINGTON ... from all and all manner of actions and causes of action, suits, debts ... judgments, claims and demands whatsoever in law or equity, especially to No. 47 July Term, 1975, in the Court of Common Pleas of Chester County, regarding an automobile accident which occurred on December 15, 1974 in the Borough of Kennett Square, Chester County, Pennsylvania ...

Thus, Washington will not be held individually liable for any additional losses involved herein, regardless of our decision in the instant case.[1]

On the parties' Cross Motions for Summary Judgment, the Court of Common Pleas of Chester County determined that the limitation contained in both insurance policies was clearly and simply stated and should be accorded its plain and ordinary meaning. Consequently, the court refused to allow "stacking" of coverage under the second policy upon coverage provided under the first policy.

Appellant's main contention on appeal is that Nationwide is precluded from relying on the "other insurance" limitation contained in the policies to deny additional liability

---

1. Nationwide has not challenged appellants' right to maintain this action against it.

coverage to Washington because: 1) Nationwide failed to demonstrate that the effect of the limitation was explained to the insured as mandated by *Hionis v. Northern Mutual Insurance Co.*, 230 Pa.Super. 511, 327 A.2d 363 (1974); and 2) Washington paid premiums to secure liability coverage under both policies. Because the appeal raised important issues regarding the scope of the *Hionis* doctrine, it was certified for consideration by the court *en banc* and arguments were heard on October 17, 1983. In the interim, this Court learned that the *Hionis* case had been questioned in arguments before our Supreme Court and, thus, our decision herein was delayed pending disposition of that case. On December 30, 1983, the opinion in *Standard Venetian Blind Co. v. American Empire Insurance Co.*, 503 Pa. 300, 469 A.2d 563 (1983) was filed. We analyze this case in light of our Supreme Court's most recent pronouncement regarding principles governing the interpretation of insurance contracts.

In *Hionis v. Northern Mutual Insurance Co.*, 230 Pa.Super. 511, 327 A.2d 363 (1974), a restauranteur secured fire insurance to protect against loss to improvements made on the building he leased. The insurance policies provided that he was entitled to full coverage if the improvements were replaced within a reasonable time, but only partial coverage if the improvements were not replaced. When the restaurant was destroyed by fire, the insurer denied full coverage on the ground that the restauranteur had failed to replace the improvements. This Court determined that the insured was entitled to full coverage under both policies despite the exclusionary language contained therein. The Court stated:

> When a defense is based on an exception or exclusion in a policy, our Supreme Court has held that such a defense is an affirmative one, and the burden is upon the defendant to establish it. *Weissman v. Prashker*, 405 Pa. 226, 233, 175 A.2d 63 (1961). Even where a policy is written in unambiguous terms, the burden of establishing the applicability of an exclusion or limitation involves proof that the insured was aware of the exclusion or limitation and

that the effect thereof was explained to him. (citations omitted)

The Court specifically determined that the limiting language in the fire insurance policies in *Hionis* was not to be given effect because it was "technical and unclear" and because the insurer failed to offer any proof of the insured's awareness and understanding of the exclusion.

Subsequently, our Court relied on *Hionis* in holding that the insurer has the burden of establishing the insured's awareness and understanding of an exclusion from coverage before the insurer may rely on the exclusion to deny coverage, even if the policy language is clear and unambiguous. *Kelmo Enterprises v. Commercial Union Insurance Co.,* 285 Pa.Super. 13, 426 A.2d 680 (1981); *Klischer v. Nationwide Life Insurance Co.,* 281 Pa.Super. 292, 422 A.2d 175 (1980); *See also, O'Malley v. Continental Insurance Co.,* 305 Pa.Super. 302, 451 A.2d 542 (1982) (insurer met burden of establishing the insured's awareness of the exclusion in the policy and its meaning). The federal courts have interpreted *Hionis* as establishing a rule of insurance contract interpretation in Pennsylvania. *See Selected Risks Insurance Co. v. Bruno,* 718 F.2d 67 (3rd Cir.1983), and cases cited therein. A number of exceptions to the rule in *Hionis* have also been recognized. *See e.g., McDonald v. Keystone Insurance Co.,* 313 Pa.Super. 404, 459 A.2d 1292 (1983) and *Miller v. Prudential Insurance Co. of America,* 239 Pa.Super. 467, 362 A.2d 1017 (1976) (insurer not obligated to prove insured's awareness of an exclusion where basic coverage did not include incurred loss and insured's reasonable expectations were fulfilled); *Broker's Title Co., Inc. v. St. Paul Fire & Marine Insurance Co.,* 610 F.2d 1174 (3rd Cir.1979) and *Brezan v. Prudential Insurance Co. of America,* 507 F.Supp. 962 (E.D.Pa.1981) (insurer not obligated to prove that exclusion was explained to the insured where parties to insurance contract were of relatively equal bargaining power).

*Standard Venetian Blind Co. v. American Empire Insurance Co.,* 503 Pa. 300, 469 A.2d 563 (1983), involved the

interpretation of a policy of liability insurance issued by American Empire Insurance Co. (American) to Standard Venetian Blind Co. (Venetian). The policy provided liability coverage for all sums which the insured would be obligated to pay as damages for personal injury and property damage. American was also obligated to defend any suit instituted against the insured on account of such personal injury or property damage. The "Exclusions" section of the policy provided that the insurance did not apply "to property damage to [Venetian's] products arising out of such products," or "to property damage to work performed by or on behalf of [Venetian] arising out of the work or any portion thereof or out of materials, parts or equipment furnished in connection therewith."

When a portico installed for a customer of Venetian, by Venetian's subcontractor, collapsed during a heavy snowstorm causing damage to the customer's property stored underneath, American agreed, on behalf of Venetian, to indemnify the customer for the cost of the damaged property and the cost of labor. Nonetheless, American refused to defend Venetian in an assumpsit action brought by the customer and also refused to tender payment for the cost of the portico itself, on the ground that damage to Venetian's products was expressly excluded from coverage under the terms of the policy. On Venetian's petition for declaratory judgment, the trial court found that the exclusions were "plain and free of ambiguity". However, relying on *Hionis,* the court determined that Venetian was entitled to full coverage for the total loss, since Venetian was not aware of the exclusion and its meaning had not been explained. The Superior Court affirmed by per curiam order and the Supreme Court reversed.

The court reiterated the traditional rules governing interpretation of insurance contracts:

> The task of interpreting a contract is generally performed by a court rather than by a jury. *See Gonzalez v. United States Steel Corp.,* 484 Pa. 277, 398 A.2d 1378 (1979); *Community College of Beaver County v. Society of the*

*Faculty*, 473 Pa. 576, 375 A.2d 1267 (1977). The goal of that task is, of course, to ascertain the intent of the parties as manifested by the language of the written instrument. *See Mohn v. American Casualty Co. of Reading*, 458 Pa. 576, 326 A.2d 346 (1974). Where a provision of a policy is ambiguous, the policy provision is to be construed in favor of the insured and against the insurer, the drafter of the agreement. *See Mohn v. American Casualty Co. of Reading, supra.* Where, however, the language of the contract is clear and unambiguous, a court is required to give effect to that language. *See Pennsylvania Manufacturers' Ass'n Insurance Co. v. Aetna Casualty & Surety Insurance Co.*, 426 Pa. 453, 233 A.2d 548 (1967). "[I]n the absence of proof of fraud, 'failure to read [the contract] is an unavailing excuse or defense and cannot justify an avoidance, modification or nullification of the contract or any provision thereof.' " *Olson Estate*, 447 Pa. 483, 488, 291 A.2d 95, 98 (1972), quoting *Orner v. T.W. Phillips Gas & Oil Co.*, 401 Pa. 195, 199, 163 A.2d 880, 883 (1960).

503 Pa. at 304, 469 A.2d at 566. Relying on these principles, the court determined that Venetian could not avoid the application of the clear and unambiguous policy limitations contained in its contract with American. In overruling the *Hionis* doctrine, the court stated:

We believe that the burden imposed by *Hionis* fails to accord proper significance to the written contract, which has historically been the true test of parties' intentions. By focusing on what was and was not said at the time of contract formation rather than on the parties' writing, *Hionis* makes the question of the scope of insurance coverage in any given case depend upon how a factfinder resolves questions of credibility. Such a process, apart from the obvious uncertainty of its results, unnecessarily delays the resolution of controversy, adding only unwanted costs to the cost of procuring insurance. Thus, *Hionis*, which would permit an insured to avoid the application

of a clear and unambiguous limitation clause in an insurance contract, is not to be followed.

*Id.*, 503 Pa. at 306, 469 A.2d at 567.

■ In the instant case, the limitation clause in Nationwide's policies provides: "If Property Damage or Bodily Injury Liability coverage in more than one Nationwide policy applies to a loss, we will pay only up to the highest limit in any one policy." The trial court determined that the language of the limitation in the insurance policies issued to Washington was a "model of clarity" and the "essence of simplicity". The court afforded the words their plain and ordinary meaning and concluded that Nationwide was responsible only for the highest liability coverage limit in any one policy of insurance. We find, as did the trial court, that the limiting language in the policies herein was clear and unambiguous and easily understandable by the ordinary purchaser of insurance. We will not "torture" the language in order to create ambiguity where none exists. *See Garber v. Traveler's Insurance Co.*, 280 Pa.Super. 323, 421 A.2d 744 (1980). By the terms of these contracts, Nationwide was clearly liable only for the liability coverage limit of $25,000 under one insurance policy for the loss that occurred in this case. The insured may not avoid the application of the clear and unambiguous policy limitation by relying on Nationwide's failure to prove that the insured was aware of the limitation and that its meaning was explained to him.[2] *Standard Venetian Blind Co. v. American Empire Insurance Co.*, 503 Pa. at 305, 469 A.2d at 566.

■ However, appellants also contend that the "other insurance" limitation in the policies issued to Washington was unconscionable. In *Standard Venetian*, our Supreme Court tempered its rejection of *Hionis:*

**2.** Nationwide offered no evidence that its agent explained the limiting language in the policies to Washington when he purchased the insurance covering his car and his truck. Conversely, the Administrators offered no evidence that Nationwide failed to explain the limiting language to Washington or that Washington was unaware of the meaning of the limitation.

Although on this record we reject *Hionis,* we note that in light of the manifest inequality of bargaining power between an insurance company and a purchaser of insurance, a court may on occasion be justified in deviating from the plain language of a contract of insurance. *See* 13 Pa.C.S. § 2302 (court may refuse to enforce contract or any clause of contract if court as a matter of law deems the contract or any clause of the contract to have been "unconsionable at the time it was made").

503 Pa. at 307, 469 A.2d at 567. The Uniform Commercial Code, 13 Pa.C.S.A. § 2302, referred to by the Supreme Court, specifically provides in subsection (a):

(a) Finding and authority of court.—If the court as a matter of law finds the contract or any clause of the contract to have been unconscionable at the time it was made, the court may:

(1) refuse to enforce the contract;

(2) enforce the remainder of the contract without the unconscionable clause; or

(3) so limit the application of any unconscionable clause as to avoid any unconscionable result.

By its terms, the Uniform Commercial Code—Sales is applicable only to transactions involving the sale of goods "[u]nless the context otherwise requires . . . ." 13 Pa.C. S.A. § 2102. Nonetheless, many courts have recognized that a wide variety of business transactions are subject to scrutiny under the unconscionability doctrine contained in § 2302. *See e.g., Melso v. Texaco, Inc.,* 532 F.Supp. 1280 (E.D.Pa.1982), aff'd 696 F.2d 983 (3rd Cir.1982) (dealership credit card agreement); *Leasing Service Corp. v. Broetje,* 545 F.Supp. 362 (S.D.N.Y.1982) (lease agreement); *Stanley Klopp, Inc. v. John Deere Co.,* 510 F.Supp. 807 (E.D.Pa. 1981) aff'd 676 F.2d 688 (3rd Cir.1982) (franchise contract); *In Re Elkins-Dell Manufacturing Co.,* 253 F.Supp. 864 (E.D.Pa.1966) (security agreement); *Albert Merrill School v. Godoy,* 78 Misc.2d 647, 357 N.Y.S.2d 378 (1974) (educational services agreement). In particular, it has been held that the sale of insurance and contracts of insurance are

within the scope of the unconscionability section of the Uniform Commercial Code. *See e.g., Yankelevitz v. Royal Globe Insurance Co.,* 107 Misc.2d 636, 435 N.Y.S.2d 900 (1981) rev'd on other grounds; 451 N.Y.S.2d 166, 167, 88 A.D.2d 934 (1982); *C & J Fertilizer, Inc. v. Allied Mutual Insurance Co.,* 227 N.W.2d 169 (Iowa 1975). *See generally,* 2 R. Anderson, Uniform Commercial Code § 2–302:20 (3rd ed. 1982). Thus, we analyze the insurance contracts herein under the Code concept of unconscionability.[3]

▮ Initially, we note that whether a contract or clause is unconscionable is a question of law for the court. *Stanley A. Klopp, Inc. v. John Deere Co.,* 510 F.Supp. at 810; 13 Pa.C.S.A. § 2302. Generally, the party challenging a contract or a particular contract term has the burden of proving unconscionability. *See Argo Welded Products, Inc. v. J.T. Ryerson Steel & Sons,* 528 F.Supp. 583 (E.D.Pa. 1981); 2 R. Anderson, Uniform Commercial Code § 2–302:12 (3rd ed. 1982). On a motion for summary judgment, a court may conclude, as a matter of law, that a contract or clause is enforceable regardless of an allegation of unconscionability, as long as there is no genuine issue of material fact. *Camerlo v. Howard Johnson Co.,* 545 F.Supp. 395, 397–398 (W.D.Pa.1982); *Argo Welded Products Inc. v. J.T. Ryerson Steel & Sons Inc.,* 528 F.Supp. at 593; *Stanley A. Klopp, Inc. v. John Deere Co.,* 510 F.Supp. at 810.

It is impossible to formulate a precise definition of the unconscionability concept. The drafters of the Uniform Commercial Code have expressed the principle as "one of prevention of oppression and unfair surprise ..." U.C.C. § 2–302, Comment 1. In *Witmer v. Exxon Corp.,* 495 Pa. 540, 434 A.2d 1222 (1981), our Supreme Court quoted the "classic" definition of unconscionability articulated by

**3.** We recognize that the Court in *Witmer v. Exxon Corp.,* 495 Pa. 540, 434 A.2d 1222 (1980), expressly declined to reach the question whether the unconscionability doctrine in the Uniform Commercial Code was applicable to a rental adjustment clause in a lease agreement. However, the Court's opinion in *Standard Venetian* clearly indicates that a court may police unfair or oppressive insurance contracts under the unconscionability concept in the code.

Judge Skelly Wright in *Williams v. Walker-Thomas Furniture Co.*, 350 F.2d 445 (D.C.Cir.1965):

> Unconscionability has generally been recognized to include an *absence of meaningful choice* on the part of one of the parties together with contract *terms which are unreasonably favorable to the other party.*
>
> 495 Pa. at 551, 434 A.2d at 1228 quoting *Williams v. Walker-Thomas Furniture Co.*, 350 F.2d at 449.

Appellants contend that the insurance contracts herein were unconscionable on the grounds that: 1) Nationwide took "unfair advantage" of Washington by including the "other insurance" provisions in the policies; and 2) Washington received no additional liability insurance for the premium he paid on his second policy.

█ Insurance contracts are generally viewed as contracts of "adhesion". Under such a contract, the parties are usually not of equal bargaining power and the buyer must adhere to the terms of a form contract which are not negotiable. *See Brokers Title Co. v. St. Paul Fire and Marine Insurance Co.*, 610 F.2d 1174 (3rd Cir.1979); Corbin on Contracts, Part I, § 559c at 327 (1984 Supp.). We note, however, that appellants have not alleged that disparity of bargaining power between the parties to this insurance contract resulted in an absence of assent on the part of the insured; nor is there any evidence of record tending to prove that the insured was unaware of the policy terms or that he was deceived in some way by Nationwide. Nonetheless, even assuming that there was a disparity of bargaining power between the parties, it would not be sufficient, by itself, to render the contract unconscionable. *Witmer v. Exxon Corp.*, 495 Pa. at 551, 434 A.2d at 1228; *Melso v. Texaco, Inc.*, 532 F.Supp. at 1297. Once a contract is deemed to be one of adhesion, its terms must then be examined by the court for fairness, in order to determine whether they were unreasonably favorable to one party. *Melso v. Texaco, Inc.*, 532 F.Supp. at 1297; Corbin on Contracts, Part I, § 559c at 327 (1984 Supp.)

■ The language of a contract clause which limits liability coverage must be clear and precise in order to prevent unfair surprise. *See K & C, Inc. v. Westinghouse Electric Corp.*, 437 Pa. 303, 308–309, 263 A.2d 390, 393 (1970); *Stanley A. Klopp, Inc. v. John Deere Co., supra.* The insurance policy involved in this case is a "plain talk" policy, written in understandable, straight-forward language. The "other insurance" provision is a conspicuously labeled, bold-type sub-section listed under a larger bold-type heading entitled "Limits of Payment". This is not a case where an exclusion from coverage that defeats the reasonable expectations of the insured is buried in fine print deep in the insurance contract. *Compare, C & J Fertilizer, Inc. v. Allied Mutual Insurance Co.*, 227 N.W.2d 169 (S.Ct. Iowa 1975). *See also, Leasing Service Corp. v. Broetje*, 545 F.Supp. 362 (S.D.N.Y.1982); *Williams v. Walker-Thomas Furniture Co., supra.*

■ The Nationwide policies issued to Washington do not *exclude* all recovery for losses such as the one involved in this case. Rather, under the "other insurance" provision, Nationwide confined its obligation to pay bodily injury liability losses to the highest limit in any one policy ($25,-000). The limitation is expressed in precise and conspicuous language and there is no *per se* rule which prohibits an insurance company from so limiting its liability. Indeed, the premium rate charged by Nationwide to provide coverage under these policies was approved by the Pennsylvania Insurance Commissioner (RR. p. 32a). We do not find that Nationwide took "unfair advantage" of Washington by including the "other insurance" provision in its insurance policies.

Moreover, appellants' argument that Washington received no additional liability insurance coverage for the premium he paid on his second policy is unpersuasive. For the premium payment made on the second policy of insurance, Washington secured substantial insurance coverage on his pick-up truck. Such coverage was *in addition* to the insurance provided under his first policy, since that policy

covered the operation of another motor vehicle—his car. In particular, he received additional *liability coverage* since Nationwide was obligated to pay damages for *inter alia,* bodily injury or property damage sustained by third persons as a result of the operation of Washington's truck. Nationwide collected two premiums for the two separate policies because it provided protection against the risks attendant to having two insured vehicles on the road instead of one. *See Antanovich v. Allstate Insurance Co.,* 320 Pa.Super. 322, 467 A.2d 345 (1983).

However, appellants argue more specifically that the policies were unconscionable because Washington received no additional liability coverage for that *part* of his second premium payment which was applicable to the risk that third parties would suffer bodily injury caused by the insured's use of "other motor vehicles". In other words, appellants argue that Washington should have been entitled to *twice* the dollar amount of liability coverage because he paid relatively equal annual premiums on two policies of insurance, and both policies covered the loss that occurred in this case.[4] This argument presupposes that Nationwide calculated its premiums by affixing a separate unit price to each risk of loss covered in a particular insurance policy. Nonetheless, there were countless permutations and combinations of risks assumed by the insurer under the policies issued to Washington, and there is no evidence of record indicating that Nationwide arrived at its premiums by assigning a price tag to each risk. Indeed, Nationwide's Answers to Interrogatories stated that Nationwide's premiums were based upon other factors, such as age, sex and marital status of the insured, the type of vehicle, and the policy holder's residence. It would be impossible for the Court to determine, on the basis of the record in this case, what part, if any, of Washington's second premium payment was meant to apply to the risk that a third party would sustain injuries caused by the insured's operation of

---

4. Washington paid an annual premium of $122.60 for insurance coverage on his car and $125.00 for insurance coverage on his truck.

a non-owned vehicle. *See Fireman's Fund Insurance Co.
v. Nationwide Mutual Insurance Co.*, 317 Pa.Super. 497,
505–509, 464 A.2d 431, 436–438 (1983) (court declines to
utilize premium-based proration method to calculate pro
rata contribution one insurer is entitled to receive from
another because of complications inherent in determining
what portion of an insurance premium is paid to cover any
one risk assumed by the insurer). Presumably, Wash-
ington's main purpose in purchasing the second policy was
to secure insurance coverage for his truck. Appellants
have provided us with no evidence that Nationwide collected
twice the amount in premiums for the particular risk attend-
ant to providing "other vehicle" liability coverage, nor is
there evidence that Washington's purpose in purchasing the
second policy was to secure double coverage against this
specific risk. *See Pusti v. Nationwide Mutual Insurance
Co.*, 415 Pa. 318, 326, 203 A.2d 660, 664 (1964).

Accordingly, we find nothing "unconscionable" about the
"other insurance" provision contained in Nationwide's poli-
cies as applied to the facts in this case. This is not a case in
which the insured bought no insurance for the second
premium paid; rather, Washington secured substantial in-
surance coverage for the operation of his second vehicle.
Thus, Nationwide was not precluded from asserting the
clear policy limitation on the ground that it accepted a
second premium payment. *See Pusti v. Nationwide Mutu-
al Insurance Co., supra.* Nationwide simply prohibited the
"stacking" of payment limits under a policy which provided
liability coverage for one vehicle, upon payment limits un-
der a second policy which provided liability coverage for a
second vehicle. Allowing the Administrators to recover the
payment limits under *both* policies would require that we
"recast" the bargain struck by Nationwide and Washington.
We are convinced that such a result is not warranted under
the circumstances of this case. Thus, on the basis of the
terms of the insurance policies and the undisputed facts of
record, we find that Nationwide was liable only for the

$25,000 payment limit under one policy issued to Washington.

The trial court's order entering Summary Judgment in favor of Nationwide is affirmed.